Marshall, C. J.
 

 In the matter of an indictment against one W. F. Peters in the court of common pleas of Portage county, Ohio, charging a violatioii of Section 17-1, General Code, a demurrer to the indictment was sustained on two grounds: (1) That the indictment did not state an offense; and (2) that the indictment was bad for duplicity. The defendant being discharged from custody, exceptions were filed in this court by the prosecuting attorney under Sections 13681 to 13684, inclusive, General Oode, to obtain the decision of this court to determine the law to govern similar cases.
 

 Section 17-1, General Code, reads:
 

 “Except in case of extraordinary emergency, not to exceed eight hours shall constitute a day’s work and not to exceed forty-eight hours a week’s work, for workmen engaged on any public work carried on or aided by the state, or any political subdivision thereof, whether done by contract or otherwise; and it shall be unlawful for any person, corporation or association, whose duty it shall be to employ or to direct and control the services of such workmen, to require or permit any of them to labor more than eight hours in any calendar day or more than forty-eight hours in any week, except in cases of extraordinary
 
 *251
 
 emergency. This section shall be construed not to include policemen or firemen.”
 

 That section was enacted to make operative Section 37, Article II, of the Ohio Constitution, as amended in 1912, as follows:
 

 “Except in cases of extraordinary emergencies, not to exceed eight hours shall constitute a day’s work, and not to exceed forty-eight hours a week’s work, for workmen engaged on any public work carried on or aided by the state, or any political subdivision thereof, whether done by contract, or otherwise.”
 

 The indictment charges that "W. F. Peters was director of public service of the city of Akron and that it was his duty to employ, direct, and control the services of workmen engaged in operating the waterworks of the city of Akron, which works are located in Portage county, and that Peters “did unlawfully require and permit” one Hugler, a workman, to labor in the waterworks plant of said city for more than 48 hours in one week, during which time no extraordinary emergency existed.
 

 It will be observed that the statute is in the language of the constitutional provision, it evidently being the purpose of the Legislature to make the constitutional provision operative and to provide a penalty for violation. The demurrer to the indictment reached the two questions of insufficiency and duplicity. These two questions will be discussed in their order.
 

 The major question relates to the sufficiency of the indictment, and the vital element in that question relates to the proper interpretation of the
 
 *252
 
 language “for workmen engaged on any public work carried on or aided by the state, or any political subdivision thereof, whether done by contract or otherwise.”
 

 The discussion has taken a wide range and, among other things, has involved the technical meaning of the word “workman” and of the expréssion “public work.” The demurrer admits the truth of the well-pleaded allegations of the indictment, and it may therefore be assumed for the purposes of this discussion that Hugier wás regularly employed, and that Peters as director of public service was responsible for that employment, and that the work being performed by Hugier was that of a workman engaged in performing certain labor in and about the operation of a waterworks plant, which had theretofore béen completed. It would be a waste of time under such circumstances to inquire at length whether he was a “workman.” Whether he was at the time, under the circumstances already outlined, “engaged on any public work,” is the more vital subject of inquiry. It is contended that a person engaged in the maintenance or operation of a utility plant, the product and service of which is supplied to the people of a municipality, does not come within the purview of this section. It is further contended that if it had been the legislative intent to include the operatives of a municipal utility, more apt language to that end would have been employed.
 

 The expression “public work” is very frequently employed in ordinances, state statutes, and congressional acts, and the reported eases, construing
 
 *253
 
 that expression, and declaring the legislative intent in the various statutes under consideration in those cases, respectively, are somewhat numerous. Many have been cited, all of which have been examined; but it is believed that it would be a fruitless task to discuss them, or to point out the features which distinguish them from the present controversy, in order to show that those statutes were for different purposes and to serve different ends. Only a limited number of the eases have been found profitable.
 

 In
 
 Stange
 
 v.
 
 City of Cleveland,
 
 94 Ohio St., 377, 114 N. E., 261, there was a prosecution for violation of an ordinance of the city of Cleveland, in practically the same language as the statute here under consideration; it being charged that the workman was engaged in the
 
 construction
 
 of a large filtration plant for the use of the city of Cleveland. It is therefore claimed that this feature distinguishes that authority from the instant case. The statute having been enacted pursuant to Section 37, Article II, of the Constitution, the legislative intent must be measured by the intent of the framers of that section of the Constitution.
 

 Cases have been cited which hold that municipally owned utilities are public works, and this inference can readily be drawn from the
 
 Stange case,
 
 inasmuch as the workman in that case was engaged in the erection of a filtration plant and the conviction was sustained. It does not, however, follow that merely because a workman engaged in the construction of a public utility affords a basis for prosecution of the person who requires or permits him to be thus employed, in violation of
 
 *254
 
 the statute, a workman employed in maintaining or operating a public utility after completion would justify a prosecution. Many reasons could be advanced for regulating the employment of labor in the construction of a public building, which would have no application to the maintenance and operation of the building or plant after completion. The problems involved in original construction are wholly and essentially different from the problems of maintenance and operation.
 

 We have been cited to the proceedings of the Constitutional Convention, in which Section 37 of Article II was framed. Those proceedings disclose that that section was originally drawn in the following terms:
 

 “Not to exceed eight hours shall constitute a day’s work and not to exceed forty-eight hours á week’s work, on the construction, replacement, alteration, maintenance and operation of all public works, buildings, plants, machinery, at which laborers, workmen and mechanics are employed, carried on or aided by the state or any political subdivision thereof, whether done by contract or otherwise, except in cases of extraordinary emergency.”
 

 If the original adoption had remained without change, we would have little difficulty in this case. A comparison of that original adoption with the final adoption, as hereinbefore quoted, shows an essential difference. • It is explained by counsel for the state that the original draft was intended as the final expression of the convention and that the change was the work of the committee on arrangement and phraseology. It is. further contended, upon the authority of
 
 State ex rel. Atty.
 
 
 *255
 

 Gen.
 
 v,
 
 Kennon,
 
 7 Ohio St., 546, that the modifications of the committee on arrangement and phraseology cannot in any event have any effect upon the original draft of that section before submission to that committee. On page 564 of the opinion, by Brinkerhoff, J., the duties of that committee are discussed at length. The conclusion reached is that ordinarily it will be presumed that the “committee and the convention had alike understood the report to be at least the substantial equivalent of what had before been settled in convention.”
 

 An examination of the change made by the committee in that case shows that no substantial or radical change was made, and that the words which were in fact added by the committee were fairly implied from the original draft. This condition does not prevail in the instant case. The very broad language contained in the original draft was clear and specific and covered a very much larger field than the restricted language of the final draft. A very radical and sweeping change having been made in the language of the section, the presumption arising from the character of the committee on arrangement and phraseology, that the revised draft was intended to have the same meaning and effect as the original draft, is no stronger than the presumption, that the sweeping changes in fact made indicated a change of heart on the part of the convention and a deliberate intent to restrict the provisions of the section within more narrow limits. Quite certain it is that the convention carefully considered the prohibition of the longer hours of service in the “construction, replacement, al
 
 *256
 
 teration, repair, maintenance and operation of all public works, buildings, plants, machinery at which laborers, workmen and mechamos are employed,” which would clearly have included all kinds of labor performed for the public, whether in the public and governmental capacity, or of a private and proprietary character, and after submission to a committee, and on further action thereafter, restricted that language to “workmen engaged on any public work. ’ ’ By whatever means the results were reached, it must necessarily be assumed that the methods were deliberate, and that the final draft was the fruit of the intelligent thought of the convention.
 

 Inasmuch as it appears from the language of the indictment in this case that it was sought to punish the service director by reason pf the employment of a workman in and about the operation of a public utility owned by the city, which utility is being operated by virtue of the private and proprietary powers of the municipality, it is apparent that the validity of this indictment can only be sustained upon the theory that the language of the Constitution and statute is broad enough to cover any kind of employment on the part of a municipality. The Legislature in enacting Section 17-i, General Code, could not have understood the constitutional provision to have such a broad import, and this is shown by the fact that the statute excepts the cases of policemen and firemen. If all kinds of employment were intended to be included by the constitutional mandate, the Legislature had no power to classify, and to exclude certain municipal employment. In other words, the Legislature
 
 *257
 
 could not legalize that which the Constitution had declared to be illegal. The legislative power extends only to providing a penalty for the violation.
 

 We have been cited to decisions of other states as to what constitutes public work, but they can have no particular value in construing the language of the Constitution and statute of Ohio, because of the great difference in the language employed. A few examples are sufficient to demonstrate this point. In the state of Maryland a statute provides that in the city of Baltimore “eight hours shall constitute a day’s work for all laborers
 
 * *
 
 * or mechanics who may be employed by or on behalf of the mayor and city council.” Laws, Md., 1910, e. 94, Section 2. A statute in Oregon provides that “in all cases where labor is employed by the state, * * * no person shall be required or permitted to labor * * * more than eight hours in any one day.” Section 6721, Oregon General Laws, 1920.
 

 In West Virginia a statute provides that “eight hours shall constitute a day’s work for aid laborers, workmen, and mechanics, who may be employed by or on behalf of the state.” Chap. 15R, Section 1, Barnes’ W. Va. Code, 1923.
 

 On the other hand, as providing a more restricted prohibition in the employment of labor by the public, Arkansas provides that eight hours shall constitute a day’s work for each person who works on public roads, highways, and bridges. Crawford & Moses’ Dig. Ark., Section 5348. The state of Missouri makes the prohibition apply to “laborers and mechanics who may hereafter be employed by any contractor or subcontractor upon any of the
 
 *258
 
 public works.” Section 8199, Rev. Stats, of Missouri, 1919. Tbe state of Wyoming has a similar statute applying to “laborers or workmen or mechanics employed upon any public works of the state of Wyoming, or of any county, city and town * * whether said work is done by contract or otherwise.” Section 4308, Wyoming Compiled Statutes, 1920.
 

 It must be assumed that the Constitution framers acted deliberately and advisedly and with knowledge of the provisions of Constitutions and statutes of other states, and having first agreed upon a provision containing a sweeping prohibition, and at a later date having finally adopted a more limited restriction, such limited restriction should be construed with that strictness which is usually employed in construing penal provisions in statutes and Constitutions and should not be broadened beyond the natural import of the language employed.
 

 The rather recent decision of this court in the
 
 Stange case, supra,
 
 makes Section 37, Article II, applicable to employment upon the construction of public improvements, and we have reached the conclusion that it should not be extended beyond the principles declared- in that case. Upon this branch of the exceptions the judgment of this court is that the ruling of the court of common pleas should be sustained.
 

 The second question submitted to this court by the exceptions of the prosecuting attorney is whether or not the indictment is bad for duplicity. Section 17-1 provides that it is unlawful to “require or permit” a workman to labor more than the pre
 
 *259
 
 scribed time, and the indictment charges that Peters did “require and permit” the laborers to labor more hours than the time limited. It being contended that two separate and distinct offenses are charged in a single count, the court of common pleas ruled that the indictment was on that ground bad for duplicity. The dictionaries define the word “require” as “authoritatively demanding or requesting something to be done.” The word “permit” is defined as “allowing by tacit consent or by not hindering. ’ ’ By the terms of the statute either permitting or requiring is made a method of violation. It is apparent from the foregoing definitions that one could not be guilty of requiring without at the same time being guilty of permitting. Proof of requiring would necessarily include proof of permitting. Proof of permitting would not include proof of requiring, but it could make no difference, because the proof of permitting proves the offense. This situation is not exactly parallel to those crimes which include other offenses, which are punishable by a lesser degree of punishment, and yet it is significant that in charging a graver offense proof may be made and a conviction obtained for any included offense, and it is not necessary to have a separate count, nor could the prosecutor be compelled to elect. In this case the act of permitting being included within the act of requiring, and both being in the same degree, and carrying the same punishment, there should be less reason for requiring the same to be stated in a separate count than in those crimes involving the so-called included offenses. It is apparent that no possible prejudice could arise in this case, and it must be conceded
 
 *260
 
 that no disadvantage arises out of both terms being used in a single count, and no advantage would accrue by having two separate counts, one of which might be designed to cover the charge of requiring and the other the charge of permitting. We are not driven to this extremity in the instant case, because, after all, the offense does not consist technically in either requiring or permitting. The gist of the offense is the responsibility of the defendant, if any, for the service of the workman for the prohibited number of hours in any day or week. The fact of requiring or permitting is only the means whereby this condition of responsibility is established. We are of the opinion that there is only one offense which may be committed by one or the other process. The test of duplicity is whether proof of one would tend to establish guilt of the other. And if there were two separate mid distinct offenses in the statute of such different character that evidence relating to one would have no bearing upon the guilt or innocence of the other, a different situation would be presented. Our view of this statute is that there is only one offense, and that the prohibited means whereby this offense may be committed are so related to each other, and the one is so inclusive of the other, that there can be no prejudice to the defendant and therefore no necessity for pleading two separate counts. Inasmuch as the two terms are stated successively in the same statute, they become subject to a rule discussed in Wharton’s Criminal Procedure (10th Ed.), Section 300:
 

 “Where a statute * * * makes two or more distinct acts connected with the same transaction
 
 *261
 
 indictable, each one of which may be considered as representing a phase in the same offense, it has in many cases been ruled that they may be coupled in one count.”
 

 The text-writer cites
 
 State
 
 v.
 
 Conner,
 
 30 Ohio St., 405, which we think supports the text. The following cases also sustain the validity of the indictment in the instant case:
 
 Mackey
 
 v.
 
 State,
 
 3 Ohio St., 362;
 
 State
 
 v.
 
 Horn,
 
 19 Ark., 578;
 
 State
 
 v.
 
 Ringer,
 
 6 Blackf. (Ind.), 109.
 

 Where a single offense may be committed in different ways, a count is not double which charges the commission of the offense in two or more ways, provided there is no repugnancy between them. At the trial the offense may be established by proof of its commission in any one of them. This subject is discussed and the rule declared in Bishop’s New Criminal Procedure (2d Ed.), Volume I, Section 434, and Volume III, Sections 293, 294, 295.
 

 Many cases are cited in support of that text. There is a. further discussion of this principle in Wharton’s Criminal Pleading and Practice, Section 251, where the above-quoted text is restated. The footnote cites more than a score of cases.
 

 It is interesting to note that in the case of
 
 Atkin
 
 v.
 
 Kansas,
 
 191 U. S., 207, 24 S. Ct., 124, 48 L. Ed., 148, a ease which was taken on error from the Supreme Court of Kansas, there was involved the interpretation of the Eight-Hour Law of the state of Kansas, which law, while essentially different from the Ohio statute, nevertheless contains the words “require or permit.” The indictment in that case contained a single count and is indentical on that feature with the indictment in the in
 
 *262
 
 stant case, and contained the language, “require and permit.” The question of duplicity was not raised in that case, but it ran the gauntlet of the state courts and the Supreme Court of the United States, and it may at least be inferred that it was not considered of importance and that the accused did not regard the form of the indictment as prejudicial to him.
 

 The subject of duplicity is a growth of the common law which has never been made the subject-matter of legislation in Ohio. The courts of other states have in some reported cases gone to unreasonable lengths in requiring separate counts stating different elements of a single offense, but it must be stated in justice to the Supreme Court of Ohio that its rulings on the subject of duplicity in criminal pleading have been quite conservative and based upon common sense doctrines. The entire subject of duplicity in criminal pleading is for the most part involved in technicalities calculated to serve persons accused of crime in their efforts to escape by technicalities much more' than it is calculated to aid in promoting substantial justice.
 

 For the foregoing reasons, the exceptions to the ruling of the court on the subject of duplicity will be overruled.
 

 Exceptions sustained in part; overruled in part.
 

 Jones, Matthias, Day, Allen, Kinkade, and Robinson, JJ., concur.