No. 15,447.

CARTER v. CITY AND COUNTY OF DENVER.
(160 P. [2d] 991)

Decided July 2, 1945.

Mr. WALTER F. SCHERER, Mr. NORMAN E. COBB, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. FRANK L. HAYS, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE BAKKE delivered the opinion of the court.

IN this case, Carter, plaintiff in error, plaintiff below, who was employed at the Denver General Hospital, sued the City and County of Denver, to which we hereinafter refer as the city, to recover additional wages, representing the difference between the amount he had received in payment of his services and that to which he contends he was entitled under a charter provision which fixes a minimum wage of $5.00 a day for "all laborers employed on public or municipal work." The trial court held against his contention, and he seeks a reversal of the judgment entered accordingly.

The charter provision 319A, page 163 (Charter), 1927 Municipal Code, reads as follows: "On and after January 1st, 1925, all laborers employed on public or municipal work, either directly by the City and County, or by contractors, sub-contractors, individuals, co-partnerships, associations or corporations, on such work for the city and county shall receive and be paid not less than Five Dollars ($5.00) for a calendar day's work of eight hours; and that on and after January 1, 1925, all labor performed by a man and a team of two horses on public or municipal work, either directly by the city and county or by contractors, sub-contractors, individuals, co-partnerships, associations or corporations, on such work for the city and county, shall receive and be paid not less than 'Ten Dollars ($10.00) for a calendar day's work of eight hours; and that the hiring or employing of any laborer or man with a team of two horses for a day of eight hours for less than the sums above specified, or for any fractional part of a day of eight hours on a basis less than the rate herein specified, shall be unlawful."

As above noted, plaintiff was employed at the Denver

General Hospital, which is owned, operated and maintained by the city, through the department of health and charity. He was classified as a "houseman," and his duties consisted of scrubbing and waxing floors; washing walls, woodwork and windows; sweeping floors and sidewalks; disposing of trash and waste material; calling for and distributing supplies and equipment, and conveying mattresses to sterilizers.

 Specification of points upon which plaintiff relies for reversal amount simply to the assertion that the judgment is contrary to the law and the evidence. Such assignments standing alone would justify affirmance without written opinion—*Wilson v. Giem,* 90 Colo. 27, 5 P. (2d) 880—but in view of the importance of the question involved, we have concluded to decide the case on the merits.

 The city defends on five grounds, but for our purpose we dispose of the matter under the general denial, and agree with the city's contention, which was upheld by the trial court, that this charter provision never was intended to, and does not, apply to one in the status of plaintiff.

It is not denied that he performed labor in the sense in which the word is ordinarily used, i.e., working with his hands at tasks that require no particular skill. It may also be said that he was doing "municipal work," in the sense that he was an employee of the municipality, but it still does not follow that he has brought himself within the charter provision, which refers to laborers engaged in public or municipal work on which it is customary to use horses, and more frequently designated as public construction work, or public works, where it is necessary to use scrapers for excavation, graders for road construction, teams for hauling material, and the like.

It is true that the first clause in the quoted charter provision is broad enough to include such work as that

performed by the plaintiff at the hospital, but since one of the elementary rules of statutory construction is that words, phrases, clauses and sentences in a paragraph must be construed in connection with, and in relation to, the rest of the paragraph, it follows here that the clause upon which reliance is placed must be construed in relation to the clause having to do with men and teams. This conclusion becomes inescapable when the language, "the hiring or employing of any laborer or man with a team" in the last clause ties them together.

Public work has been defined as, "A work in which the state is interested; every species and character of work done for the public, and for which the tax-paying citizens are liable; work by or for the state and by or for a municipal corporation and contractors therewith." 50 C.J., p. 867, §97.

The words "public work," when used in connection with contracts for public work, are not used in their broad sense, but are meant to embrace contracts akin to building contracts. *Employers' Casualty Co. v. Stewart Abstract Co.* (Tex.), 17 S.W. (2d) 781.

As indicating that the term "public work," when used in a similar charter provision, is used in the limited or restricted sense as applying to "public works," see *Clough v. City of Colorado Springs,* 70 Colo. 87, 197 Pac. 896.

It thus appears that the word "laborer," as used in this charter provision, refers to one ordinarily engaged in "construction" work, or what is commonly designated as "public works" falling within the department of improvements and parks, "which shall have full charge and control of all public improvements and works heretofore under the board of public works and the commissioner of improvements; likewise, full charge and control of all parks within or without the city, and parkways leading to or from said parks, heretofore under the control of the park board, and of the commissioner of property." Charter, supra, article III, sec-

tion 14, sub-section (3). Under article III, section 15, sub-section (83), the manager of parks and improvements is given "exclusive management and control of the construction, reconstruction and maintenance of all public and local improvements, the care, repair and maintenance of all streets, alleys and other highways and public places, of all sewers, sidewalks, bridges, viaducts, tunnels and other like structures, of all buildings belonging to, and the construction of all buildings for the city and county, *except buildings used exclusively for fire or police purposes or for hospitals * * *.*" (Italics are ours.)

As further indication that the above charter provision was not intended to, and does not, include laborers such as plaintiff, we point out that under the charter, article V, page 77, section 118, sub-section (5) "the manager of health and charity shall be the officer in full charge and control of said department." And under section 119, sub-section (106), supra, "he shall have control of the city and county hospitals." Under section 918, pages 631, 632 of the Municipal Code, it is the duty of the said manager "to superintend the work of any and all persons acting or performing duty under the bureau of health of the city and to see that their duties are performed * * * He shall instruct all persons employed in the bureau of health as to their duties." Under section 919, page 632, supra, "He shall also cause to be kept a full and correct account of all expenses incurred by his authority, specifying the amounts, why, when and how incurred and for what purposes applied, * * * [and] before any money is paid out the accounts therefor shall be examined and signed and approved by the manager * * *." As to plaintiff's inclusion in this department, Mr. Schwalb testified that plaintiff was given his directions by a head houseman who in turn was directly responsible to him (Mr. Schwalb). The amount of plaintiff's salary was based upon a survey made by the Denver Hospital Association "showing the wages

paid for various kinds of work in all the hospitals of Denver," and, under the plan used at the hospital, "there is a work sheet for every employee [including plaintiff] in every part of the department." In this connection it also should be noted that it is undisputed· that plaintiff was employed at a *monthly* rate and for years without protest on his part was compensated on such basis. On its face the charter provision in question only has to do with·a *daily* rate. This distinction, ordinarily considered an important factor in the classification of employees, patently lends support to the contention of the city herein.

It is undisputed that during the twenty years that the charter provision involved has been in force, no employee of the hospital has ever requested to be placed on the five dollar a day basis, and no one connected with the department has ever considered that any of the hospital employees were "laborers" covered by the charter provision. Mr. Stapleton, who was the mayor of Denver at the time the said provision was adopted, and, who has been mayor ever since, except for one term, testified that the provision had been discussed a good many times, and that "we have never considered the houseman as a laborer." While Manager Schwalb stated he never had been asked to construe its meaning, it does not follow that there is lack of administrative construction. The rule as stated in 59 C.J., page 1025, section 609, reads: "The contemporaneous construction placed upon a statute by the officers or departments charged with the duty of executing it is entitled to more or less weight, especially if such construction has been made by the highest officers in the executive department of the government, *or* has been observed and acted upon for a long period of time; and, while not generally controlling, where the case is not extreme and no vested rights are involved, such construction should not be disregarded or overturned except for the most cogent reasons, and unless clearly

erroneous * * *." (Citing four Colorado cases) In the same text, 59 C.J., page 1023, section 608, the author says: "On the principle of contemporaneous exposition, common usage and practice under the statute, or a course of conduct indicating a particular understanding of it, will frequently be of great value in determining its real meaning, especially where the usage has been acquiesced in by all parties concerned, and has extended over a long period of time * * *." (Citing *Brown v. State,* 5 Colo. 496).

A case very illustrative of what we have said is that of *Stetson v. Seattle,* 74 Wash. 606, 134 Pac. 494, wherein several firemen of that city brought suit to compel the city to fix their hours of work on the theory that they had performed certain labor for the city in connection with their duties as firemen under an ordinance that provided, inter alia: "* * * The services and employment of all day laborers and mechanics who are now or hereafter may be employed from time to time by the city of Seattle, or by any contractor or sub-contractor, upon any of the public works of the city of Seattle is hereby limited and restricted to eight (8) hours in any one calendar day." The court in denying the claim said, in part:

"This state has not legislated upon the subject of hours for men's work excepting in so far as it affects labor upon public works or work done 'by contract or day labor done.' Our laws, as they are at present written, apply only to those who work by the day and are paid by the day, or who come within the definition of contract labor upon public works.

"That the people of the city of Seattle had in mind, and intended to preserve, this distinction is to be inferred, not only from the words of the charter and ordinance, but from the further fact that the charter has divided the several functions of the city and provided for their exercise by separate boards. Article 8 covers 'the department of public works.' In this article refer-

ence is made to such matters as would naturally be classed as public work. Article 11 covers 'the fire department.' There is nothing in this article that would suggest that firemen are laborers employed upon 'any public works of the city.' A further instance of popular construction is to be found in the ordinance quoted above. It will be remembered that the Charter §1, art. 18, provides: „ 'This article shall be enforced by the city council by ordinance.' The ordinance, it will be seen, was drawn so as to include only *day laborers and mechanics* who may be employed upon any of the public works of the city. It cannot be seriously contended that an employee of the fire department is either a day laborer or a mechanic within the meaning of this ordinance. The fact that the people have adopted a charter which does not classify the work of the fire department as public work, but on the contrary excludes it from the jurisdiction of the board of public works, makes this certain. Furthermore, the use of the words 'contractor or sub-contractor' would imply that the people of Seattle understood the words 'public works' to mean such work as was usually done with day labor by contractors, or which might, if the council so ordered, be done by the city itself."

Counsel for plaintiff seek to distinguish this and similar cases from the case at bar on the ground that they refer to "public works" instead of "public or municipal work" as designated in the Denver charter provision. The attempted distinction is without merit. In the Stetson v. Seattle case, just cited, the court, in construing the Seattle ordinance, points out that the legislative act of the State of Washington, passed to declare the public policy of that state, is entitled, "An act declaring it to be a part of the public policy of the State of Washington that all public work for it, or any political subdivision created by its laws, shall be performed in work days of not more than eight hours each * * *." Rem. Rev. State Wash. §7645, Wash. S.L. '03, c. 44. The Colo-

42

rado counterpart of this is found in section 103, chapter 97, '35 C.S.A. This language would seem to be synonymous with that used in the Denver charter, namely, "public or municipal work." This conclusion is supported by a similar statute in Ohio, which reads in part, as follows: "Workmen engaged on any public work carried on or aided by the state, or any political subdivision thereof, whether done by contract or otherwise" (Gen. Code Ohio [2d ed. '26] §17-1), construing which the Supreme Court of Ohio held that it could not be extended to include a workman in the water plant in Akron. *State v. Peters*, 112 Ohio St. 249, 147 N.E. 81. See, also, *Clements v. Sherwood*, 70 Ohio App. 266, 45 N. E. (2d) 805, where defendant Sherwood occupied the same relative position as does the manager of health and charity under the Denver charter.

Plaintiff's assumption here that he was employed "on public or municipal work" begs the very question we are called upon to decide. Under this portion of his argument he cites no authority to support his contention.

We conclude that the trial court's judgment is supported by both the law and the evidence and accordingly it is affirmed.

MR. JUSTICE KNOUS and MR. JUSTICE JACKSON concur.