CORN CONSTRUCTION COMPANY, Appellant,

v.

AETNA CASUALTY AND SURETY COMPANY OF HARTFORD, CONNECTICUT, an insurance company, Appellee.

AETNA CASUALTY AND SURETY COMPANY OF HARTFORD, CONNECTICUT, Appellant,

v.

Lloyd FILES, Cordelia E. Files, A. O. Johnson, City of Grand Junction, Colorado, and Columbia Savings & Loan Association, Appellees.

Nos. 6653, 6654.

United States Court of Appeals
Tenth Circuit.

Sept. 14, 1961.

---

Eugene H. Mast, Grand Junction, Colo., for appellant, Corn Const. Co.

H. Gayle Weller, Denver, Colo. (Fred M. Winner, Denver, Colo., and Elmer W. Beasley, Hartford, Conn., on the brief), for Aetna Casualty & Surety Co. of Hartford, Connecticut.

Harry S. Silverstein, Jr., Denver, Colo. (Gerald J. Ashby, Grand Junction, Colo., on the brief), for appellees, A. O. Johnson, Columbia Savings & Loan Association, and City of Grand Junction, Colorado.

Haynie, Golden & Mumby, Grand Junction, Colo., for appellees, Lloyd Files and Cordelia E. Files.

Before PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

A Grand Junction, Colorado, housing project failed to fulfill the hopes of its developers and the resulting financial entanglements are the cause of this suit over which there is federal jurisdiction because of diversity of citizenship. The case was tried without a jury and none of the comprehensive findings of fact made by the court are contested.

No. 6653 is an appeal by Corn Construction Company (Corn) from a denial of its claim based on services rendered and materials furnished by it as a subcontractor to Western States Construction Company (Western) and asserted against a performance bond given by Western as principal and Aetna Casualty and Surety Company as surety to the City of Grand Junction (the City) to assure the construction of certain off-site subdivision improvements.[1] The court denied recovery on the ground that the bond was not intended to secure payment to those furnishing such labor and materials.

No. 6654 is an appeal by the surety from denial of its claim for either subrogation or exoneration and from the allowance of the claim of Columbia Savings & Loan Association (Columbia) against the surety in the amount paid by the City for work in connection with the off-site improvements after default of Western and failure of the surety to perform. The City assigned this claim to Columbia.

Orderly treatment of the issues requires that first consideration be given to the claim of the surety for either subrogation or exoneration and this necessitates a review of the uncontroverted facts.

Files and others owned land adjacent to the City. Saltz and others (the Saltz Group) were interested in purchasing, subdividing, and developing this land. Files petitioned the City for annexation and the City imposed as a condition precedent to annexation an agreement and performance bond assuring the construction, without cost to the City, of the off-site improvements.

Prior to annexation Files conveyed the land to Mesa Homes, a limited partnership organized by the Saltz Group, and took back a purchase money deed of trust which provided for subordination to construction loans and for partial releases upon payment to Files of $550 for each lot sold by the developers.

After this conveyance to Mesa Homes, Western, a corporation having as its officers various members of the Saltz Group, made a contract with the City whereby Western undertook at its own cost to construct the off-site improvements. This contract was supported by the required performance bond in the sum of $157,200 executed by Western as principal and

---

1. Herein the term off-site improvements is used to refer to the work which Western agreed with the City to do. The work included curbs and gutters, streets, gas and water lines, sewers, tree removal, and the covering of irrigation ditches.

Aetna as surety. The City was the sole obligee named in the bond and the condition of the bond was the construction of the off-site improvements provided for in the contract between Western and the City. The bond was issued on an application containing an indemnification agreement signed by Western, Mesa Homes, and the Saltz Group individually.

Prior to the agreement between Western and the City, Western and Mesa Homes contracted with Columbia for construction loans to cover the cost of homes to be built in the subdivision. This agreement stated that it was contingent upon Western furnishing a surety bond guaranteeing completion and payment of the off-site improvements required by the City and by the Veterans Administration and the Federal Housing Administration. The agreement recognized title in Mesa Homes and the existence of the Files' trust deed. The agreement is silent as to the manner of disbursement of the construction loans and as to the disposition of the proceeds from lot sales.

Western made a contract with Corn for the construction of the off-site improvements at an estimated cost of $157,200. Nothing was said in that contract as to the time or manner of payment to Corn. As the project developed and properties were sold, Columbia paid the on-site construction costs directly to those furnishing the labor and materials and also paid Corn for the off-site improvements.

Evidently, by virtue of some understanding which is not disclosed in the record, Columbia allocated $950 of the sale price of each lot to the payment of the off-site improvements, and paid to Corn from such sources over $76,000. In the spring of 1956 Corn refused to continue unless certain payments on account were made. The completion of the off-site improvements was necessary not only to satisfy the City but also to make the properties eligible for loan insurance by the Veterans Administration and the Federal Housing Administration.

Columbia informed the surety of the situation and proposed that the surety advance funds for the off-site improvements and offered to reimburse the surety at the rate of $950 for each lot sold. The surety rejected this offer stating it was looking to its indemnitors to fulfill their obligations and that its investigation showed that Western was capable of fulfilling its contract with the City. From then on the situation deteriorated. Corn, asserting that $29,253.13 was due it from Western, stopped work on the off-site improvements. The City made demand on the surety for satisfaction of the performance bond. Western and Mesa Homes either ran out of money or refused to put more money into the project. Columbia, which was faced with a substantial loss, made arrangements with Mesa Homes for the conveyance of the unsold lots to Johnson, an officer of Columbia, under a trust agreement whereby Columbia advanced additional funds. Sales were to be made by Johnson, and the sale proceeds were to be used to repay Columbia and to pay for the off-site improvements with any remaining balance to go to Mesa Homes.

After the default of Western and the demand of the City on the surety for performance additional progress was made on the off-site improvements. By arrangements between the City and the surety, Corn did further work for which it was paid $27,124 by the City and the City was reimbursed by the surety. This is the sum which the surety seeks to recover from Files, Johnson and Columbia. The City was not reimbursed for an additional $9,886.86 which it spent on the off-site improvements for the subdivision. The City assigned its claim for this amount against the surety to Columbia. The trial court gave Columbia a $9,886.86 judgment against the surety. In addition Columbia spent about $9,700 of its own funds for off-site improvements and in its counterclaim demanded this amount from the surety. The claim was denied and no appeal has been taken from that denial.

At the time of trial the off-site improvements called for by the contract

between Western and the City had not been completed and part of the subdivision remained undeveloped and unsold.

Western, Mesa Homes, and the members of the Saltz Group were named in the complaint as parties defendant but no service was made on them.

The surety claims both subrogation and exoneration. As to subrogation the theory is that the parties by their agreements and their course of conduct created an equitable lien, enforceable by the City, against the land or the proceeds from the sale of the land and that the surety is subrogated to the rights of its obligee, the City, to enforce such lien. Exoneration is claimed on the ground that others are primarily liable for the discharge of the obligation undertaken by the surety.

The surety has never performed in full its obligation to the City under the performance bond. The rule that subrogation occurs only after full performance [2] has been relaxed in instances where the court has grounds other than subrogation for the exercise of equitable jurisdiction [3] and where there is no disturbance of the rights of creditors.[4] As that situation prevails we must consider subrogation.

As a subrogee of the City the surety obtains only the rights of the City. The only right of the City was to have the off-site improvements constructed without cost to it. The City did not agree to pay any one for those improvements or to assist in the collection of money for such payment. The cases cited by the surety [5] which hold that after performance a surety has rights against its obligee for funds in the obligee's hands which would have belonged to the principal if the principal had performed are beside the point as the City never had such funds in its possession or under its control.

No equitable lien claim can arise through the City as there was no obligation on the City to create a charge against the property for off-site improvements by compliance with the applicable Colorado statutes [6] and it did not do so. In the absence of such compliance the City has no lien against the land.[7]

The surety is not aided by any claim as the subrogee of its principal, Western. If it be assumed that the surety by performance stands in the shoes of Western and is entitled to payment from the same sources as Western, the trouble is that the record is devoid of any evidence establishing such sources. The contract between Western and Columbia is no aid to the surety as that contract was expressly made contingent upon the surety bond guaranteeing completion of and payment for the off-site improvements. This was a disavowal by Columbia of any liability on account of such improvements. The trust agreement between Mesa Homes and Columbia whereby Johnson took title to unsold lots does provide that after Columbia is paid in full from the proceeds of lot sales the balance remaining shall be applied to off-site improvements but, even if the relationship between Western and Mesa Homes is such as to entitle Western to any benefits from that contract, there is no showing that the lot sales will ever be sufficient to pay Columbia.

As subrogee of Western the surety has no rights against either Files or

---

2. American Surety Co. of New York v. Westinghouse Electric Mfg. Co., 296 U.S. 133, 137, 56 S.Ct. 9, 80 L.Ed. 105; Mid-States Ins. Co. v. American Fidelity & Cas. Co., 9 Cir., 234 F.2d 721, 731; Glades County, Florida v. Detroit Fidelity & Surety Co., 5 Cir., 57 F.2d 449, 451–52. Cf. Standard Acc. Ins. Co. of Detroit Michigan v. Federal Nat. Bank, 10 Cir., 112 F.2d 692, 695.

3. Ulery v. Asphalt Paving, Inc., Fla.App., 119 So.2d 432, 437.

4. Standard Surety & Casualty Co. of New York v. Standard Accident Ins. Co., 8 Cir., 104 F.2d 492, 497.

5. E.g. Western Lumber & Pole Co. v. City of Golden, 23 Colo.App. 461, 130 P. 1027.

6. Colo.Rev.Stat.Ann. § 139–32–1(15) (1953).

7. Town of Ordway v. Kaiser, 90 Colo. 313, 9 P.2d 287.

Johnson. Files, the beneficiary of the purchase money trust deed, never agreed to subordinate his trust deed to any claims arising out of the off-site improvements. Johnson did not receive title until long after the execution of the contract between Western and the City and the execution of the performance bond by the surety. Johnson acted as the agent for Columbia. No basis is shown for the assertion of any claim against him as an individual.

■ The claim of an equitable lien, arising through Western, against the proceeds from lot sales falls for two reasons. First, Western never owned the subdivision and had no participation in lot sales. Second, the only ground asserted to sustain the equitable lien is unjust enrichment. There is no showing that anyone who ever owned the land and could have charged it with an equitable lien was unjustly enriched. Files may receive only the money due under his trust deed. Johnson acted only as agent for Columbia and Columbia is entitled only to the return of its advances with interest.

As the subrogee of Western, the surety may have rights against the Saltz Group which promoted the development and against Mesa Homes which owned the land at the time of the arrangement between the City and Western. To recover against them the surety does not have to take the subrogation bypath. It can take direct action on the indemnification agreement.

Exoneration is claimed on the ground that the City has an equitable lien which it is required to enforce instead of looking to the surety for performance. As we have shown there is no equitable lien on either the land or the proceeds from lot sales. The effort of this compensated surety to avoid full performance of its legal obligations by a shift of responsibility to others with whom neither it nor the City contracted for the construction of the off-site improvements has no equitable appeal. The City has the right to demand and receive full performance. The surety is entitled to no relief by way of either exoneration or subrogation. It must look to its principal and its indemnitors.

■ The surety attacks the judgment in favor of Columbia on the claim assigned by the City on the ground that there was no consideration for the assignment because Columbia was primarily liable to furnish the off-site improvements. Our holding that Columbia was not primarily liable for those improvements disposes of that argument. The situation is that the City caused to be done work which Western as principal and Aetna as surety were bound to do and assigned its claim for the money paid for such work to Columbia for the full amount thereof. Morro Palisades Co. v. Hartford Accident & Indemnity Company, 52 Cal.2d 397, 340 P.2d 628, relied on by the surety is not in point. There the work was not performed and the County assigned to the landowner its entire claim for damages against the surety. It was held that under California law the action could be maintained only by the public body. Here we have partial performance at the expense of the City and the assignment of a claim against the surety for the amount so expended. Our attention is called to no Colorado statute or decision either forbidding such assignment or depriving the assignee of the right to sue in its own name. Cobbey v. Peterson, 89 Colo. 350, 3 P.2d 298, is not helpful as that decision was based on the fact that the obligee had relinquished his ability to place the surety in his shoes. Here the assignment by the City did not deprive the surety of any right against its principal or indemnitors.

■ The remaining issue relates to the claim of Corn against the surety to recover $29,253.13 for labor and materials furnished by Corn to Western in connection with the off-site improvements. The query is whether there may be recourse against the performance bond for labor and materials. The contract between Western and the City was not for public works to be paid for with public funds. Rather it was for off-site improvements which the subdividers needed to obtain

loan insurance from the Veterans Administration and the Federal Housing Administration and to obtain subdivision annexation. The contract between Corn and Western was made prior to the contract between Western and the City. While it was stipulated that Corn knew that the City would require a bond and knew that the bond had been written, such knowledge does not establish any reliance on the bond by Corn when it undertook to do the work.

Further, the Colorado statutes pertaining to public improvements by contract[8] require advertisement for award of contract on competitive bids. Here there was no advertisement, no competitive bids, and no expenditure of public funds required.[9]

■ Since these off-site improvements were not public works, the Colorado statutes relied upon by Corn[10] and the cases cited by Corn upholding labor and material claims against sureties on performance bonds made pursuant to statutory requirements governing public works paid for with public funds have no application.

■ Corn argues further that it is a third-party beneficiary under the bond. In Colorado a labor or material claimant is not a third-party beneficiary of a performance bond taken by the owner unless the contract insured by the bond contains express provisions enjoining the contractor to pay labor and material suppliers or equivalent provisions such as requiring the production of receipts covering labor and materials as a condition of payment.[11] Here Western agreed with the City "at its [Western's] own cost and expense, to cause the following improvements to be constructed." Neither that contract nor the bond contained any express or equivalent provision for the payment of labor and materials. Further, the bond ran to the City as obligee and the City was under no obligation to pay laborers or material suppliers. As there was no duty on the part of the City to pay there was no corresponding duty on the surety.[12]

In Nos. 6653 and 6654 the judgments are severally affirmed.

8. Colo.Rev.Stat.Ann. § 139–76–3 (1953).

9. In Carter v. City and County of Denver, 114 Colo. 33, 160 P.2d 991, 992, the Colorado Supreme Court defines "public work" as: "A work in which the state is interested; every species and character of work done for the public, and for which the taxpaying citizens are liable; work by or for the state and by or for a municipal corporation and contractors therewith."

10. Colo.Rev.Stat.Ann. §§ 86–7–4 to 86–7–6 (1953).

11. State Board of Agriculture v. Dimick, 46 Colo. 609, 105 P. 1114, followed in Gardner Bros. & Glenn Const. Co. v. American Surety Co., 95 Colo. 456, 37 P. 2d 384.

12. Restatement, Contracts, § 145 (1932).