Paul ROSSI, Plaintiff–Appellant,

v.

OSAGE HIGHLAND DEVELOPMENT, LLC, Defendant–Appellee.

No. 07CA1665.

Colorado Court of Appeals, Div. V.

Jan. 8, 2009.

Franke Greenhouse List & Lippit, LLP, Charles Greenhouse, Stephanie D. Loughner, Bethany A. Johnson, Denver, Colorado, for Plaintiff–Appellant.

Lansky Weigler, P.C., Wendy E. Weigler, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge RUSSEL.

This appeal arises from consolidated actions for (1) release of liens, brought by Osage Highland Development, LLC, and (2) judicial foreclosure on those liens, brought by Paul Rossi. The trial court entered judgment in favor of Osage and ordered Rossi to pay Osage's attorney fees.

Rossi appeals both the judgment and the order awarding attorney fees. We affirm the judgment and vacate the order.

## I. Background

In 1990, Rossi loaned money to his friends, Jack and Jean Smyth. The loan was secured by a promissory note and a deed of trust on real property located in Denver's Highlands neighborhood.

In 1992, following the death of her husband, Jean Smyth defaulted on the note. Rossi did not foreclose on the deed of trust because he was concerned about Jean's financial circumstances and because she promised to pay him when she sold the Highlands property.

Jean died in 1998, and Rossi did not assert a claim against her estate. Consequently, in 2003, the Highlands property was conveyed by a personal representative's deed to Jean's son, Daniel Smyth.

In 2005, Rossi and Daniel created and recorded a second promissory note. As pertinent here, the note has these features:

1. Although the note does not mention the original debt that Jean Smyth owed to Rossi, it fairly appears that the parties thought of it as a continuation of that debt. The new note is for the amount that would have been due in 2005 had the original note continued at the original rate of interest.

2. The note purports to impose a personal debt on Daniel. It also states that it is "secured by a Building [at the address of the Highlands property]." The note does not contain a power of sale.

3. The note was not supported by any additional consideration. (Although the note states that it was created "[f]or value received," the court found that Rossi gave nothing to Daniel, and this finding is not challenged on appeal.)

After creating the note, Daniel sold the property to Osage. This led to three related actions:

1. *05CV9707.* Rossi brought a foreclosure action under C.R.C.P. 120, seeking an order authorizing a public trustee's sale of the Highlands property. Osage defended on the ground that Rossi's claim was time barred. After hearing evidence, the court ruled in favor of Osage.

2. *06CV10783.* Osage later brought an action under C.R.C.P. 105.1 seeking an order (1) releasing Rossi's liens, and (2) awarding costs and attorney fees under the spurious lien statute, section 38–35–204, C.R.S.2008.

3. *07CV5066.* While Osage's Rule 105.1 action was pending, Rossi filed an action seeking judicial foreclosure of the Highlands property. The court consolidated this action with Osage's pending case. (The court subsequently ruled that all filings would be lodged under case no. 05CV9707.)

In 2007, the court resolved the consolidated action in favor of Osage. After hearing the parties' arguments, and after reviewing documents and transcripts from the Rule 120 hearing, the court ruled as follows: (1) the 1990 lien expired when the statute of limitations barred Rossi's ability to collect on the underlying debt; (2) the 2005 note did not revive the 1990 lien; and (3) therefore, Rossi's liens and foreclosure documents were spurious. The court awarded costs and attorney fees to Osage.

Rossi filed a timely motion for post-trial relief under C.R.C.P. 59. He argued that the court had erred in relying on evidence presented during the Rule 120 hearing instead of receiving new evidence. The court denied this motion in a written order.

## II. Presentation of Evidence

Rossi contends that the court erred in failing to receive additional evidence before resolving the consolidated action. And he argues that, for this reason, the court abused its discretion in denying his motion for post-trial relief. We find no error.

For purposes of analysis, we assume that Rossi had the right to present additional evidence at the second hearing. *See Westar Holdings P'ship v. Reece,* 991 P.2d 328, 331–32 (Colo.App.1999) (when a court conducts a hearing under section 38–35–204 to determine whether a lien or document is spurious, it may not rely solely on allegations and legal argument unless the parties waive the right

to present evidence). We nevertheless conclude that Rossi cannot prevail on this argument because he failed to assert this right.

At the 2007 hearing, the court suggested that it could rely on the transcript of the Rule 120 hearing instead of taking new testimony. Rossi did not object or make an offer of proof about additional information that he wanted to introduce. His failure to do so is fatal to his argument. *See* CRE 103(a) (error may not be predicated on a ruling excluding evidence unless the party objects and makes an offer of proof).

### III. Validity of the Lien

Rossi contends that the court erred in ruling that he has no valid lien on the Highlands property. His argument depends solely on the validity of the 1990 lien. (Rossi has never asserted that the 2005 note created a new, separately enforceable lien.)

We affirm the ruling on grounds different from those relied on by the trial court. *See Wilson v. Meyer,* 126 P.3d 276, 281 (Colo. App.2005) (affirming on different grounds).

### A. The 1990 Lien

■ As noted, the court ruled that the 1990 lien was extinguished when Rossi lost his ability to collect on the underlying debt. We affirm its ruling as follows:

1. Jean Smyth failed to pay the 1990 promissory note, which was due on October 18, 1992. Rossi's cause of action accrued on the next day. *See Nagy v. Landau,* 807 P.2d 1227, 1228–29 (Colo.App.1990) (cause of action accrues on the day after maturity of a promissory note).

2. Ordinarily, Rossi would have had six years—until October 19, 1998—to bring a claim for enforcement of the promissory note. *See* § 13–80–103.5(1)(a), C.R.S.2008 (six-year limitations period for actions "for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt").

3. However, Jean died on October 7, 1998. This gave Rossi an additional four months—until February 19, 1999—to bring his claim. *See* § 15–12–802(2), C.R.S.2008 (limitations period that runs from "some event other than death or the giving of notice to creditors for claims against a decedent is suspended during the four months following the decedent's death but resumes thereafter").

4. Therefore, on February 20, 1999, the statute of limitations ran on Rossi's claim for enforcement of the promissory note. On that same day, the 1990 lien was extinguished. *See* § 38–39–207, C.R.S.2008; *Martinez v. Cont'l Enters.,* 730 P.2d 308, 313 (Colo.1986) (applying former version of the statute).

Rossi does not contest this chain of analysis in the abstract. (Neither he nor Osage has suggested, for example, that the claim on the note was terminated by section 15–12–803(1), C.R.S.2008.) Instead, he argues that the statute of limitations was extended by the actions of Jean and Daniel Smyth. Alternatively, he argues that, even if the limitations period had expired, the 1990 lien was revived in 2005.

We reject those arguments as follows.

### B. Extension of the Limitations Period

■ Rossi testified that he did not bring a timely claim to enforce the promissory note because Jean and Daniel Smyth had promised to pay him once they sold the Highlands property. He argued that, under these circumstances, the statute of limitations should be extended by the doctrine of equitable tolling.

The trial court properly rejected this argument. Even if true, Rossi's allegations did not warrant equitable tolling: Rossi did not allege any wrongful conduct on the part of Osage, the party defending against foreclosure; nor did he allege any truly exceptional circumstance that prevented him from filing his claim. *See Noel v. Hoover,* 12 P.3d 328, 330 (Colo.App.2000) (equitable tolling is limited to situations in which either the defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner or truly exceptional circumstances

prevented the plaintiff from filing the claim despite diligent efforts).

■ Rossi also argued that the limitations period restarted with each of the Smyths' promises. *See Drake v. Tyner*, 914 P.2d 519, 522–23 (Colo.App.1996) (if the debtor promises to repay before the limitations period has expired, that promise may restart the limitations period). The court properly rejected this argument because Rossi did not show that the Smyths' promises were in writing. *See* § 13–80–113, C.R.S.2008 (a promise does not take a case out of the statute of limitations unless it is in writing and signed); *Samples–Ehrlich v. Simon*, 876 P.2d 108, 110 (Colo.App.1994).

### C. Revival of the 1990 Lien

■ Rossi claimed that the 2005 note effectively revived the 1990 lien. The court rejected this argument because the new note did not expressly refer to the old debt. We affirm the court's conclusion, but on different grounds. *See Wilson*, 126 P.3d at 281.

Whether a claim can be revived depends on the reason that it was barred in the first place. If the claim was barred by a statute of limitations, it can be revived because a limitations statute affects, not the underlying claim, but only the ability to enforce that claim. *See In re Estate of Randall*, 166 Colo. 1, 7, 441 P.2d 153, 155 (1968) (a statute of limitations "does not bar the right of action but only the remedy"); *see also* Restatement (Second) of Contracts § 82 cmt. c (1981) ("In early cases the effect of a new promise, acknowledgment or part payment was sometimes explained in terms of rebuttal of a presumption of payment raised by the statute of limitations, or in terms of waiver of a statutory defense which the debtor in honesty ought not to assert.").

Other statutory bars, such as nonclaim statutes, preclude revival because they create an absolute bar to recovery or destroy the claim itself. *See Johnson v. Lilly*, 308 Ark. 201, 823 S.W.2d 883, 885 (1992) (noting that debt may be revived if it is barred by a statute of limitations, but not if it is barred by a nonclaim statute); *State v. Bies*, 258 Minn. 139, 103 N.W.2d 228, 236, 239 (1960)

(debt cannot be revived if it is barred by a statute of creation); *Altoona Area School Dist. v. Campbell*, 152 Pa.Cmwlth. 131, 618 A.2d 1129, 1134 (1992) (unlike statutes of limitations, which "bar recovery on a viable cause of action, ... statutes of repose are substantive in nature because they extinguish a cause of action and preclude its revival").

Here, as previously noted, the 1990 lien expired when Rossi could no longer collect on the underlying debt. We conclude that, thereafter, the 1990 lien could not be revived.

Section 38–39–207 states that a lien is "extinguished" when the statute of limitations has run on the underlying debt:

> The lien created by any instrument shall be extinguished, regardless of any other provision in this article to the contrary, at the same time that the right to commence a suit to enforce payment of the indebtedness or performance of the obligation secured by the lien is barred by any statute of limitation of this state.

By its plain terms, this statute does not merely affect a creditor's ability to enforce a lien. It destroys the lien. *See Black's Law Dictionary* 623 (8th ed.2004) ("extinguish" means "to bring to an end" or "to terminate or cancel"); *Webster's Third New International Dictionary* 806 (2002) (definition includes "do away with entirely," "wipe out," and "destroy"). Once destroyed, a lien cannot be revived. *See Berkin v. Healy*, 52 Mont. 398, 158 P. 1020, 1022 (1916) (a lien created by a mortgage, once "extinguished" by statute, cannot be revived).

Hence, even if we assume that the 2005 note revived the underlying debt, we conclude that it did not revive the 1990 lien. We therefore affirm the judgment releasing Rossi's liens and denying foreclosure on the Highlands property

### IV. Attorney Fees

Rossi contends that the court erred in awarding attorney fees to Osage under the spurious lien statute. We agree.

The terms "spurious lien" and "spurious document" are defined by statute:

> (3) "Spurious document" means any document that is forged or groundless, contains

a material misstatement or false claim, or is otherwise patently invalid.

(4) "Spurious lien" means a purported lien or claim of lien that:

(a) Is not provided for by a specific Colorado or federal statute or by a specific ordinance or charter of a home rule municipality;

(b) Is not created, suffered, assumed, or agreed to by the owner of the property it purports to encumber; or

(c) Is not imposed by order, judgment, or decree of a state court or a federal court.

§ 38–35–201, C.R.S.2008.

Under this statute, neither the 1990 lien nor the 2005 promissory note was a "spurious lien" because each was "created ... by the owner of the property"—namely, Jean (in 1990), and Daniel (in 2005). *See* § 38–35–201(4)(b), C.R.S.2008.

Nor were these filings "spurious documents," within the meaning of section 38–35–201(3), C.R.S.2008.

A document is not spurious under section 38–35–201(3) merely because it is invalid. It is spurious only if its proponent can offer no rational legal or factual support for its validity. *Pierce v. Francis,* 194 P.3d 505, 509 (Colo.App.2008); *Westar,* 991 P.2d at 330.

Here, the filings were not spurious documents because together they supported a rational argument under a theory of revival. Although we have rejected this theory, we have done so only by deciding, as a matter of first impression, that a lien cannot be revived once extinguished by section 38–39–207. *See* Maria Massaro Guttenberg, *When Do Deeds of Trust Bite the Dust?,* 27 Colo. Law. 61, 62 (Dec.1998) (noting that "Colorado courts [had not yet] addressed whether a debt affirmation made after the [debt's] statute of limitations has expired is sufficient to revive the lien"). An argument is not groundless if it involves "novel questions of law for which no determinative authority exists." *M Life Ins. Co. v. Sapers & Wallack Ins. Agency, Inc.,* 962 P.2d 335, 338 (Colo.App.1998).

Had we not resolved the revival issue on this basis, we would have confronted a close question. In some jurisdictions, a present landowner can revive a mortgage that was entered into by the prior landowner. *See Fitzgerald v. Flanagan,* 155 Iowa 217, 135 N.W. 738, 741–42 (Iowa 1912); *see also Medina v. Phelps,* 39 Colo. 92, 98, 88 P. 848, 850 (1907) (before the limitations period has expired on a mortgage created by the prior landowner, the present landowner may restart the limitations period by acknowledging and paying the underlying debt). And despite the court's ruling, there was evidence to support a finding that the 2005 note was intended as a revival:

- The note contained a promise to pay a debt, not a mere acknowledgment of a debt. *See Van Diest v. Towle,* 116 Colo. 204, 210–12, 179 P.2d 984, 988–89 (1947) (a debt can be revived either by an express promise to repay or by an acknowledgment so clear and unqualified as to imply a promise to repay).

- The note purported to be secured by the same property as the 1990 deed of trust.

- The note was for the amount that would have been due had the original note continued at the original rate of interest.

Because Rossi's revival theory was at least rational, his filings were not spurious documents.

It follows that the court erred in awarding attorney fees to Osage under section 38–35–204. *See SR Condos., LLC v. K.C. Constr. Inc.,* 176 P.3d 866, 871 (Colo.App.2007) (vacating an order that improperly awarded attorney fees under the spurious lien statute). We therefore vacate the order awarding attorney fees.

We conclude that Rossi's appeal does not lack substantial justification and therefore decline to award Osage the attorney fees that it incurred on appeal.

The judgment is affirmed, and the order awarding attorney fees is vacated.

Judge VOGT and Judge GABRIEL concur.