2013 COA 60

**TARCO, INC., Plaintiff–Appellant,**

v.

**CONIFER METROPOLITAN DISTRICT, Defendant–Appellee.**

**Nó. 12CA0250**

Colorado Court of Appeals, Div. V.

Announced April 25, 2013

Jefferson County, District Court No. 10CV35, Honorable Philip J. McNulty, Judge

Rice, LLC, T.R. Rice, Greenwood Village, Colorado, for Plaintiff–Appellant

Fowler, Schimberg & Flanagan, P.C., Timothy P. Schimberg, Andrew R. McLetchie, Denver, Colorado, for Defendant–Appellee

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS**

Opinion by JUDGE MILLER

¶ 1 In this breach of contract action, plaintiff, Tarco, Inc., a construction contractor, appeals the district court's grant of summary judgment for defendant, Conifer Metropolitan District (CMD). CMD is a special district created pursuant to the Special District Act, sections 32–1–101 to 32–20–110, C.R.S. 2012. Tarco contends that the district court erred in holding that its claims are barred by section 38–26–106, C.R.S.2012 (the bond statute), based on Tarco's failure to post performance bonds for the two contracts at issue.

¶ 2 Specifically, Tarco argues that (1) the contracts at issue were not for "public works" projects and thus not covered by the bond statute; (2) the bond statute is not a nonclaim statute; (3) CMD waived the bond statute or, in the alternative, should be equitably estopped from enforcing it; (4) CMD failed to adequately plead breach of the bond statute; and (5) if the district court properly granted summary judgment, CMD's counterclaims should be dismissed. CMD asserts that Tarco advanced frivolous arguments on appeal, thus entitling CMD to an award of fees and costs.

¶ 3 We conclude that the district court erred in granting summary judgment based on its holding that the bond statute is a nonclaim statute, notwithstanding disputed issues of material fact concerning Tarco's assertion that CMD was equitably estopped

from raising the defense. We reject the parties' other contentions.

¶ 4 Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

¶ 5 In 2005, Tarco and CMD entered into a series of contracts for construction projects related to the development of a shopping center. Tarco alleges that the work on two of the contracts is substantially complete and that CMD has wrongfully withheld payment on them.

¶ 6 Tarco sued CMD for breach of the two contracts based on CMD's nonpayment. CMD counterclaimed, alleging material breach by Tarco, thereby relieving CMD of any payment obligations and entitling it to fees and costs. After two years of litigation, CMD moved for partial summary judgment, asserting that Tarco cannot recover under the contracts because it did not satisfy the bond statute.[1] The district court granted the motion. The court subsequently granted a stipulated motion to (1) vacate the trial date, (2) certify the summary judgment order as final pursuant to C.R.C.P. 54(b) so that Tarco could appeal it, and (3) stay litigation on CMD's counterclaims until resolution of the appeal.

## II. Analysis

¶ 7 Tarco asserts that the district court erred in granting summary judgment for CMD. The court held that the contracts at issue were subject to the bond statute. The bond statute provides, in pertinent part:

A contractor who is awarded a contract for more than fifty thousand dollars for the construction, erection, repair, maintenance, or improvement of any building, road, bridge, viaduct, tunnel, excavation, or other public works for any ... political subdivision of the state ... before entering upon the performance of any such work ... shall duly execute, deliver ..., and file ... a good and sufficient bond or other

acceptable surety approved by the contracting board, officer, body, or person.... § 38–26–106(1). If the bond is not executed, delivered, and filed, "no claim in favor of the contractor arising under the contract shall be audited, allowed, or paid." § 38–26–106(2), C.R.S.2012.

¶ 8 Tarco does not dispute that it did not provide a bond. The district court concluded that the bond statute bars recovery by contractors failing to post bond and that CMD was therefore entitled to judgment as a matter of law.

### A. Standard of Review

¶ 9 We review de novo an order granting summary judgment. *McIntyre v. Bd. of County Comm'rs*, 86 P.3d 402, 406 (Colo. 2004). Summary judgment is proper when the pleadings and supporting documentation show that there is no disputed, genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo.2007). The mere existence of an alleged factual dispute is insufficient to defeat a summary judgment motion. *Andersen*, 160 P.3d at 239. Instead, the disputed factual issue must be "genuine" and "material," such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

¶ 10 Before analyzing the effect of the bond statute on Tarco's claims, we first consider and reject Tarco's contentions that (1) the district court erred in considering the bond statute because it had not been timely pled, and (2) the bond statute does not apply because the contracts at issue did not involve "public works."

### B. Pleadings

¶ 11 As an initial matter, we consider Tarco's assertion, also made in the district court, that CMD's defense based on the bond statute was not timely or sufficiently pled under C.R.C.P. 8(c) and 9(c) and therefore should not have been used by the district

---

1. The section was amended in 2009 in respects not relevant here. *See* Ch. 270, sec. 1, § 38–26– 106, 2009 Colo. Sess. Laws 1225–26.

court as a basis for granting CMD's motion for summary judgment. CMD filed the motion after the deadline for amending pleadings.

¶ 12 C.R.C.P. 8(c) requires that a party "set forth affirmatively" any affirmative defenses in its responsive pleading. Where a party claims a denial of performance of a condition precedent, the denial must be pleaded "specifically and with particularity." C.R.C.P. 9(c). According to Tarco, CMD failed to satisfy these requirements in its answer by merely referencing "Title 38" and the "penal bond statute," as opposed to specifically pleading Tarco's noncompliance with the bond statute.

¶ 13 Assuming without deciding that CMD's pleading of its bond statute defense failed to comply with the requirements of C.R.C.P. 8(c) and 9(c), we conclude, for two reasons, that such noncompliance does not bar our consideration of the defense.

¶ 14 First, CMD's contention, accepted by the district court, that the bond statute is a nonclaim statute raises a jurisdictional defense. The defense of lack of subject matter jurisdiction may be raised at any point, even on appeal for the first time. *Pueblo West Metro. Dist. v. Se. Colorado Water Conservancy Dist.,* 717 P.2d 955, 957 (Colo.1986) (citing C.R.C.P. 12(h)(3)); *Hansen v. Long,* 166 P.3d 248, 250 (Colo.App.2007). Accordingly, as discussed in part II.D below, the district court did not err in considering CMD's nonclaim statute jurisdictional arguments.

¶ 15 Second, Tarco failed to demonstrate any prejudice resulting from any failure by CMD to properly raise the bond statute defense before moving for summary judgment. "Entry of summary judgment is error if the opposing party is denied an opportunity to demonstrate that summary judgment is inappropriate." *Ferrera v. Nielsen,* 799 P.2d 458, 460 (Colo.App.1990). In *Ferrera,* the district court granted summary judgment on an issue the parties had not raised. The district court allowed the nonmoving party to respond to the new issue the court had raised, and the court considered his brief, authorities, and additional materials. A division of this court concluded that the nonmoving party was not

prejudiced by this procedure and held that any error was harmless. *Id.; see also Gognat v. Ellsworth,* 224 P.3d 1039, 1048 (Colo. App.2009) (nonmoving party was not prejudiced by district court's ruling on motion for summary judgment before a response had been filed, because nonmoving party had presented its arguments orally before decision and court also reviewed the subsequently filed motion for reconsideration and supporting materials), *aff'd,* 259 P.3d 497 (Colo.2011); *Union Ins. Co. v. Hottenstein,* 83 P.3d 1196, 1199 (Colo.App.2003) (citing C.R.C.P. 61, division disregarded district court's ruling on summary judgment before the nonmoving party's response was due because the subsequently filed response and related briefs were available in the record for de novo review on appeal).

¶ 16 Here, Tarco fully briefed the bond issue in response to the motion for summary judgment. It sought and obtained an eleven-day extension of time to file its brief, based on counsel's schedule and workload. Tarco did not file an affidavit pursuant to C.R.C.P. 56(f) explaining why it could not respond to the bond defense underlying the motion for summary judgment. Nor did it seek a continuance in the district court based on alleged surprise or request the reopening of discovery before responding to the motion. *See, e.g., Foster v. Redd,* 128 P.3d 316, 319 (Colo.App.2005) (plaintiff was precluded from raising argument after failing to file a C.R.C.P. 56(f) affidavit seeking continuance to obtain information necessary to answer motion for summary judgment); *Card v. Blakeslee,* 937 P.2d 846, 849 (Colo.App.1996) (trial court was without discretion to defer ruling on motion for summary judgment in the absence of a C.R.C.P. 56(f) affidavit).

¶ 17 Tarco argues that our supreme court's recent decision in *Town of Carbondale v. GSS Properties, LLC,* 169 P.3d 675, 676 (Colo.2007), supports its position on this issue. The court there held that a defendant may raise an affirmative defense for the first time in a summary judgment motion where (1) the plaintiff did not object to the untimely defense and (2) the plaintiff was not prejudiced by the delay in raising it. *Id.* at 679–80. The facts in the present case, however,

are distinguishable. First, the supreme court recognized that its analysis does not apply where, as here, the affirmative defense challenges the subject matter jurisdiction of the trial court. *Id.* at 681 (subject matter of the district court can be raised at any time). Second, as previously discussed, Tarco did not demonstrate that it was prejudiced by the allegedly late assertion of the defense.

¶ 18 Thus, even assuming the district court erred in considering CMD's bond statute defense, any error was harmless and must be disregarded. *See* C.R.C.P. 61.

### C. "Public Works" Projects

■ ¶ 19 Tarco also contends that the record presents a genuine disputed issue of material fact whether the contracts at issue were for "public works" projects. If they do not fall within that category, they are not subject to the bond statute, and the nonclaim jurisdictional issue does not arise. We are not persuaded that Tarco has established a disputed issue regarding the public works status of the projects.

¶ 20 Statutory interpretation presents a question of law that we review de novo. *Cochran v. West Glenwood Springs Sanitation Dist.*, 223 P.3d 123, 125 (Colo.App.2009). Our primary purpose is to ascertain and give effect to the legislature's intent. *Id.* If the statute's language is unambiguous, we "give the words their ordinary meaning and apply the statute as written." *Id.* at 125–26.

¶ 21 As discussed above, the bond statute applies to "any building, road, bridge, viaduct, tunnel, excavation, or other public works for any . . . political subdivision of the state." The supreme court has interpreted "public work" to be "[a] work in which the state is interested; every species and character o[f] work done for the public, and for which the taxpaying citizens are liable; work by or for the state and by or for a municipal corporation and contractors therewith." *Carter v. City & County of Denver*, 114 Colo. 33, 37, 160 P.2d 991, 992 (1945) (quoting 50 C.J. § 97, at 867); *see also Corn Constr. Co. v. Aetna Cas. & Sur. Co.*, 295 F.2d 685, 691 n. 9 (10th Cir.1961); *Clough v. City of Colo-*

*rado Springs*, 70 Colo. 87, 88–89, 197 P. 896, 896 (1921) (" 'public works' may include works either of construction or adaptation undertaken to subserve some purpose of public convenience," including paving of streets).

¶ 22 The two contracts at issue were for the construction of a highway overpass and infrastructure components around the shopping center, including sewers, fire hydrants, retaining walls, paving, and roadways. Tarco argues that the record "strongly suggest[s]" the projects were not public works projects and points to two categories of evidence in support: (1) statements of a CMD board member that the projects were constructed for the benefit of Conifer Town Center, LLC (CTC), a private entity, and (2) agreements between CMD and CTC whereby CTC was obligated to pay for any shortfalls incurred by CMD.

¶ 23 Even accepting Tarco's factual contentions, we conclude for three reasons that the district court did not err in determining that the contracts at issue involve public works. First, the highway overpass contract clearly calls for the construction of a "road . . . for a political subdivision of the state."[2] § 38-26-106(1). Second, the infrastructure contract similarly falls within the statutory language because it calls for the construction of roadways, retaining walls, and other "excavations" for the district. Third, these are (1) construction projects for public use and convenience, (2) for which the taxpaying citizens are liable, and (3) performed for and owned by a political subdivision. Thus, the projects fall within the supreme court's definition of public works.

¶ 24 We are not persuaded by Tarco's reference to a CMD board member's deposition testimony, which is more limited than Tarco's characterizations of it. The board member first stated only that "some portions" of the projects would benefit CTC, the private entity. Although he then said that CTC was "a beneficiary of all of the work under all the contracts," he did not state that CTC was the *sole* beneficiary. To the contrary, the projects were undertaken for CMD, a political

---

2. Tarco does not dispute that CMD is a political    subdivision of the state.

subdivision of the state; CMD was indisputably interested in the projects; the overpass and shopping center are used by the public; and the taxpaying citizens were ultimately liable. *See Carter*, 114 Colo. at 37, 160 P.2d at 992.

¶ 25 The district court properly concluded that Tarco failed to establish a genuine issue of material fact regarding whether the contracts at issue were for public works projects. Thus, the district court did not err in holding that the contracts at issue were subject to the bond statute.

### D.  CMD's Nonclaim Argument

■   ¶ 26 CMD asserts that the bond statute is a "nonclaim statute" that "implicate[s]" subject matter jurisdiction and "create[s] an absolute bar to recovery or destroy[s] the claim for relief itself," thus precluding Tarco's equitable claims of waiver and estoppel. The district court agreed that the bond statute is a nonclaim statute. We, however, disagree.

■   ¶ 27 Nonclaim statutes affect the underlying claim. *Rossi v. Osage Highland Dev., LLC*, 219 P.3d 319, 322 (Colo.App.2009). Their purpose is to "impose a condition precedent . . . to the enforcement of the right of action for the benefit of the party against whom the claim is made." *Barnhill v. Pub. Serv. Co.*, 649 P.2d 716, 718 (Colo.App.1982), *aff'd*, 690 P.2d 1248 (Colo.1984). Nonclaim statutes create an absolute bar to recovery or destroy the claim for relief itself. *Rossi*, 219 P.3d at 322. Therefore, noncompliance with nonclaim statutes deprives a court of subject matter jurisdiction, *Barnhill*, 649 P.2d at 718, and such statutes are not subject to equitable defenses, such as waiver or estoppel, *Mesa County Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1206 (Colo.2000).

¶ 28 Nonclaim statutes are rare. The sole nonclaim statute discussed in the authorities cited by CMD is the Colorado Governmental Immunity Act, §§ 24–10–101 to –110, C.R.S. 2012 (CGIA). The CGIA requires that before a person may bring suit in tort against a public entity, the person must provide a specified written notice to the entity within 180 days after the discovery of the injury. § 24–10–109(1), C.R.S.2012. The statute on its face makes clear that this notice requirement is jurisdictional and that noncompliance poses an absolute bar to recovery: "Compliance with the provisions of this section shall be *a jurisdictional prerequisite* to any action brought under the provisions of this article, and *failure of compliance shall forever bar* any such action." *Id.* (emphasis added).

¶ 29 The other frequently referenced nonclaim statute in Colorado is section 15–12–803, C.R.S.2012, in the Colorado Probate Code, which establishes specific time limits for submitting claims against a decedent's estate. We know that this statute is a nonclaim statute because it expressly says so: "This section is a nonclaim statute that cannot be waived or tolled, and it shall not be considered a statute of limitations." § 15–12–803(4), C.R.S.2012. Elsewhere in the statute, the legislature has made clear that claims not satisfying the statute's timeliness requirements are "barred." § 15–12–803(1)(a), C.R.S.2012; *see also In re Estate of Ongaro*, 998 P.2d 1097, 1102 (Colo.2000) ("The General Assembly's use of the term 'barred' indicates its intent to render concepts of waiver or tolling, which are applicable to statutes of limitations, generally inapplicable to section 15–12–803(1).").

¶ 30 The bond statute contains no such language. It merely states that unless a bond is provided, "no claim in favor of the contractor arising under the contract shall be audited, allowed, or paid." § 38–26–106(2). While the bond statute uses the mandatory word "shall," that same term is used in the statutes of limitation set forth in article 80 of title 13. *See, e.g.,* § 13–80–101(1), C.R.S.2012 ("The following civil actions . . . shall be commenced within three years after the cause of action accrues, and not thereafter . . . ."); § 13–80–102(1), C.R.S.2012 (same for two-year period); § 13–80–103.5, C.R.S.2012 (same for six-year period). Statutes of limitation, of course, are not jurisdictional and are subject to equitable defenses like waiver, tolling, and estoppel. *See, e.g., In re Estate of Randall*, 166 Colo. 1, 7, 441 P.2d 153, 155 (1968) (statute of limitations does not bar right of action and may be waived if not affirmatively pleaded); *Bad Boys of Cripple*

*Creek Mining Co. v. City of Cripple Creek,* 996 P.2d 792, 797 (Colo.App.2000) (equitable estoppel may be raised in response to statute of limitations claim); *In re Estate of Kubby,* 929 P.2d 55, 57 (Colo.App.1996) ("A statute of limitation ... does not deprive a court of jurisdiction. Equity may require that a statute of limitation be tolled ....") (citation omitted).

¶ 31 Accordingly, the bond statute is not a nonclaim statute, and compliance with its bond requirement is not a jurisdictional prerequisite to a contractor's filing suit to recover for a government entity's breach of contract. Thus, while the bond statute required Tarco to provide a bond, which it failed to do, Tarco's noncompliance does not preclude its assertion of the equitable defenses of waiver and estoppel, which we address next.

## E. Waiver

¶ 32 Tarco claims that there is a genuine and material factual dispute whether CMD affirmatively waived the bond requirement. CMD counters that, as a special district, it does not possess the power to waive the requirement as a matter of law and thus any purported waiver was ultra vires and void. We agree with CMD.

¶ 33 In general, a party may waive a contract provision where the party is "entitled to assert a particular right, knows the right exists, but intentionally abandons that right." *Burman v. Richmond Homes Ltd.,* 821 P.2d 913, 919 (Colo.App.1991). Waiver may be express or implied, such as "when a party engages in conduct which manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion." *Dep't of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984) (conduct implying an intent to waive must be "free from ambiguity and clearly manifest the intention not to assert the benefit").

¶ 34 The primary issue here, however, is whether CMD, as a special district, possessed the power or authority to waive the bond statute. Special districts are creatures of statute, and may exercise only those powers that are expressly conferred by the constitution or statute or exist by necessary implication. *South Fork Water & Sanitation Dist. v. Town of South Fork,* 252 P.3d 465, 468 (Colo.2011); *SDI, Inc. v. Pivotal Parker Commercial, LLC,* 2012 COA 168, ¶ 16, 292 P.3d 1165; *see* § 32–1–1001, C.R.S.2012. We construe liberally the Special District Act to effect its purposes. *SDI, Inc.,* ¶ 16.

¶ 35 Nonetheless, implied powers must be necessary to effectuating the express powers, and thus their validity must be interpreted narrowly. *See, e.g., Romer v. Fountain Sanitation Dist.,* 898 P.2d 37, 41-42 (Colo.1995) (no implied power to seek declaratory judgment relief against the state, despite express power to sue and be sued); *SDI, Inc.,* ¶ 22 (no implied power to assign right to receive development fee revenue, despite express power to pledge revenue for the payment of district's debts); *Steamboat Lake Water & Sanitation Dist. v. Halvorson,* 252 P.3d 497, 502 (Colo.App.2011) (district's express power to acquire and dispose of property interests does not mean it has implied power to condemn land interest through eminent domain).

¶ 36 We conclude that a special district does not possess the power to waive the requirement of the bond statute. Section 32–1–1001 provides the express common powers of special districts but does not list the power to waive the bond requirement in the bond statute. The list of express powers includes the powers to sue and be sued and to enter into contracts. § 32–1–1001(1)(d)(I), C.R.S.2012. Any implied power to waive the bond statute requirement, however, is not necessary to those common powers—a special district may enter into contracts with or without the power to waive the bond requirement. Construing the statute to give effect to the legislature's intent, we cannot conclude that a special district holds the implied power to waive a requirement expressly provided by the legislature for the manifest purpose of protecting the special district, its taxpayers, and the public.

¶ 37 Thus, there is no genuine issue of material fact whether CMD waived its rights under the bond statute.

## F. Equitable Estoppel

¶ 38 We nonetheless conclude that there is a genuine issue of material fact as to

whether the doctrine of equitable estoppel applies to CMD's conduct.

¶ 39 Equitable estoppel is based on principles of fair dealing and is designed to prevent manifest injustice. *Comm. for Better Health Care for All Colo. Citizens v. Meyer*, 830 P.2d 884, 891 (Colo.1992); *Kruse v. Town of Castle Rock*, 192 P.3d 591, 603 (Colo.App.2008). The doctrine may be asserted against governmental agencies. *Comm. for Better Health Care*, 830 P.2d at 891. "In the context of municipalities, the doctrine of equitable estoppel bars a city from enforcing some obligation by taking a position contrary to a previous representation reasonably relied upon by the party dealing with the city to his detriment." *Kruse*, 192 P.3d at 603 (quoting *P–W Investments, Inc. v. City of Westminster*, 655 P.2d 1365, 1372 (Colo.1982)). "[T]he doctrine of equitable estoppel has been invoked to cut off rights or privileges conferred by statute." *Fanning v. Denver Urban Renewal Authority*, 709 P.2d 22, 24–25 (Colo.App.1985) (quoting *Johnson v. Neel*, 123 Colo. 377, 388, 229 P.2d 939, 944 (1951)); *accord Piz v. Housing Authority*, 132 Colo. 457, 463, 289 P.2d 905, 908–09 (1955). A party asserting equitable estoppel must establish that (1) the party to be estopped knew the facts and either intended the conduct to be acted on or so acted that the party asserting estoppel must have been ignorant of the true facts, and (2) the party asserting estoppel must have reasonably relied on the other party's conduct with resulting injury. *P–W Investments*, 655 P.2d at 1372. Whether the circumstances in a case involve representation and reasonable reliance giving rise to equitable estoppel are questions of fact. *Kruse*, 192 P.3d at 603.

¶ 40 As an initial matter, CMD asserts that *Department of Transportation v. First Place, LLC*, 148 P.3d 261, 267 (Colo.App. 2006), is dispositive because it establishes that "those who deal with the [g]overnment are expected to know the law and may not rely on the conduct of government agents contrary to law." 148 P.3d at 267 (quoting *Emery Mining Corp. v. Sec'y of Labor*, 744 F.2d 1411, 1416 (10th Cir.1984)). *First Place*, however, may be distinguished on two bases.

¶ 41 First, that opinion is premised on a theory of promissory estoppel, not equitable estoppel. *See Bd. of County Commis. v. DeLozier*, 917 P.2d 714, 716 (Colo.1996) ("The doctrine of promissory estoppel should not be confused with the doctrine of equitable estoppel."). The doctrine of promissory estoppel is an "offensive theory of recovery"—a cause of action—that provides a remedy for those who detrimentally rely on another's promise. *Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo.2007). In contrast, the doctrine of equitable estoppel is not a cause of action. *Id.* It is a defensive doctrine, "which may be invoked 'to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute.'" *Id.* (quoting *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir.1981)). It may be invoked to "cut off rights or privileges conferred by statute." *Piz*, 132 Colo. at 463, 289 P.2d at 908–09; *Fanning*, 729 P.2d at 24–25.

¶ 42 The second basis that distinguishes *First Place* from the present case is the nature of the facts supporting estoppel. In *First Place*, the party relied solely on oral statements by a CDOT representative and equivocal actions by CDOT that merely gave a basis to hope that CDOT would treat First Place's property in a certain way. *First Place*, 148 P.3d at 266–67. Similarly in *Kruse* the plaintiff's reliance was based only on the "personal opinions of some Town employees" and on the town's granting her a demolition permit for the property some years prior to a historic landmark designation. P.3d at 603–04. In both cases, the divisions of this court found the reliance unreasonable. *Id.* at 604; *First Place*, 148 P.3d at 267.

Here, Tarco presented the following evidence:

- CMD accepted three of Tarco's contract proposals for the projects, which expressly excluded any bond requirement;
- The two contracts at issue did not include any language requiring a bond;
- These contracts used an Associated General Contractors of America form that

includes the following boxes for selection, which left blank on both contracts:

5 BONDS Performance and Payment Bonds Bonds [sic] are are not required of Contractor.

- Based on the nature of the projects and the participation of CTC, a private entity, Tarco concluded that the contracts did not involve a public works project and believed that its conclusion was confirmed when CMD accepted the contracts without bond requirements;
- CMD thereafter issued notices to Tarco to proceed with the construction;
- CMD paid Tarco for numerous invoices for progress payments without any objection regarding the lack of a bond;
- CMD did not assert the lack of a bond as a defense until after the commencement of litigation;
- The cost of performance bonds on the projects would have been no less than two percent of the total contract amount (as compared to a five to seven percent profit margin);
- Such a cost would have been untenable for Tarco; and
- Tarco would have significantly altered its bid or declined to participate in the bidding had it known that bonds were required.

¶ 43 This evidence, even without the CMD representative's statements, supports Tarco's contentions that (1) CMD was aware that it could have included bonds on each contract; (2) CMD wanted Tarco to proceed with performance under the contracts despite the absence of bonds; (3) Tarco reasonably relied on CMD's conduct; and (4) Tarco suffered resulting injury.

¶ 44 We therefore conclude that Tarco has demonstrated a genuine issue of material fact whether CMD is equitably estopped by its conduct from asserting the bond statute as a defense to Tarco's contract claims. The district court accordingly erred in granting summary judgment in favor of CMD on this issue.

### G. CMD's Counterclaims

¶ 45 In light of our holding on the nonclaim statute issue and our reversal in part of the summary judgment, we need not address Tarco's contentions concerning CMD's counterclaims.

### H. Fees and Costs

¶ 46 Finally, we reject CMD's assertion that it should be awarded attorney fees and costs based on Tarco's advancing frivolous arguments on two issues: that the contracts were not for public works projects and that CMD did not properly plead the bond statute. As discussed above, Tarco presented rational arguments concerning factual disputes on both issues. While we resolved these issues against Tarco, we are not persuaded that the arguments were "frivolous as argued." We also find no evidence that Tarco's appeal is "for the sole purpose of harassment or delay." *See Mission Denver Co. v. Pierson*, 674 P.2d 363, 366 (Colo.1984).

### III. Conclusion

¶ 47 The judgment is reversed as to the determination that the bond statute is a nonclaim statute and as to the dismissal of Tarco's equitable estoppel claim, and the case is remanded for further proceedings as directed. The judgment is affirmed in all other respects.

JUDGE CARPARELLI and JUDGE FOX concur.