The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 13, 2018

## 2018COA174

**No. 17CA0156, *Bank of New York v. Peterson* — Creditors and Debtors — Foreclosures — Forcible Entry and Detainer; Limitation of Actions — When a Cause of Action Accrues**

Defendants-Appellants assert that the 2015 foreclosure and the resulting judgment of possession cannot be legally enforced because the six-year statute of limitations (for an action for default on a promissory note) had already expired. In particular, they claim that Bank of New York Mellon, formerly known as Bank of New York (the Bank), triggered the statute of limitations in 2008 when it accelerated the obligation on the note.

The Bank admits that it accelerated the note in 2008 by initiating foreclosure proceedings but argues that it abandoned the acceleration in 2010 by withdrawing the foreclosure and providing defendants-appellants another opportunity to cure the default. The

Bank asserts that the abandonment restored the note's original maturity date for purposes of accrual. A division of the court of appeals agrees and therefore affirms.

COLORADO COURT OF APPEALS     **2018COA174**

Court of Appeals No. 17CA0156
Archuleta County District Court No. 15CV10
Honorable Gregory G. Lyman, Judge

Bank of New York Mellon, f/k/a Bank of New York, as Trustee, on behalf of the Holders of the Alternative Loan Trust 2007-16CB Mortgage Pass Through Certificates, Series 2007-16-CB, its Successors and Assigns,

Plaintiff-Appellee,

v.

Timothy Peterson and Dyan Frances Parker,

Defendants-Appellants.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LICHTENSTEIN
Román and Furman, JJ., concur

Announced December 13, 2018

Akerman, LLP, Justin D. Balser, Taylor T. Haywood, Denver, Colorado, for Plaintiff-Appellee

Blair K. Drazic, Loma, Colorado, for Defendants-Appellants

¶ 1     Plaintiff-Appellee, Bank of New York Mellon, formerly known as Bank of New York (the Bank), filed an unlawful detainer action after acquiring title to a house through foreclosure. Defendants-Appellants, Timothy Peterson and Dyan Frances Parker, appeal the district court's judgment granting the Bank possession.

¶ 2     Peterson and Parker assert that the 2015 foreclosure and the resulting judgment of possession cannot be legally enforced because the six-year statute of limitations (for an action for default on a promissory note) had already expired.[1] In particular, they claim that the Bank triggered the statute of limitations in 2008 when it accelerated the obligation on the note.

¶ 3     The Bank admits that it accelerated the note in 2008 by initiating foreclosure proceedings, but it argues that it abandoned the acceleration in 2010 by withdrawing the foreclosure and providing Peterson's son (the borrower) another opportunity to cure the default. The Bank asserts that the abandonment restored the note's original maturity date for purposes of accrual. We agree with the Bank and, therefore, we affirm.

---

[1] We do not address the propriety of challenging an underlying foreclosure in a subsequent forcible entry and detainer action.

## I.     Background

¶ 4     On May 14, 2007, the borrower obtained a $261,000 loan evidenced by a promissory note for a house in Archuleta County, Colorado.  The promissory note required monthly payments through June 1, 2037, and contained an optional acceleration clause.  The borrower secured the loan with a deed of trust on the property, and the Bank was the holder of the note and deed of trust.  Peterson is the borrower's attorney-in-fact.

¶ 5     The borrower soon thereafter stopped making payments.  On October 17, 2007, he received a letter from the Bank titled "NOTICE OF DEFAULT AND ACCELERATION."[2]  The letter provided that the borrower had the "right to cure the default," but that if he did not cure by November 16, 2007,

> the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time.

(Emphasis in original.)

---

[2] The letter was sent by mortgage servicer, Countrywide Home Loans, on behalf of the Bank (the holder of the promissory note).

¶ 6    The borrower received another letter, this time demanding that he cure the default by December 16, 2007. The borrower did not respond to either letter.

¶ 7    The Bank did not take any action on the default until October 2008. Meanwhile, the borrower and his father, Peterson, executed an "Option to Purchase" agreement stating that Peterson would make the monthly payments due on the note. The agreement purported to grant Peterson "full power of attorney," including "negotiating refinancing, payment plans, financial, and all legal issues" for the property.

¶ 8    After executing the agreement, Peterson and Parker began occupying the property.

¶ 9    Then, in October 2008, the Bank initiated foreclosure proceedings (the 2008 foreclosure). On December 5, 2008, the Bank moved for a court order authorizing the sale of the property pursuant to C.R.C.P. 120. But later that month, the Bank approved the borrower's request for a loan modification, whereby the borrower would owe a $2017.97 monthly payment. That same month, Peterson remitted a $2017.97 check on the borrower's

behalf.  But neither Peterson nor the borrower made any more payments.

¶ 10    Even so, on March 26, 2010, the Bank withdrew the 2008 foreclosure.  It subsequently sent the borrower a new acceleration warning letter providing him another opportunity to cure the default.

¶ 11    Nearly five years later, in January 2015, the Bank initiated and pursued foreclosure proceedings (the January 2015 foreclosure) and the district court authorized the property's sale.[3] The Bank purchased the property in the foreclosure sale.

¶ 12    Two months later, the Bank commenced the present action to acquire possession and evict Peterson and Parker from the property.

¶ 13    Peterson and Parker filed an answer and affirmative defense and counterclaims.  They asserted that they had superior title to the property, contending that the statute of limitations expired

---

[3] On appeal, the Bank filed a motion requesting this court to take judicial notice of a 2008 notice of election and demand for sale, the 2010 withdrawal of this notice, and a 2015 notice of election and demand for sale—all of which were recorded with the Archuleta County Clerk and Recorder.  We take judicial notice of the fact that these documents were recorded.  *See Doyle v. People,* 2015 CO 10, ¶ 8.

before the January 2015 foreclosure.  They argued that the Bank accelerated the loan in 2008, which triggered the six-year statute of limitations, and, thus, the January 2015 foreclosure was void. They moved to preliminarily enjoin the Bank from expelling them.

¶ 14      The Bank moved to dismiss the counterclaims pursuant to C.R.C.P. 12(b)(5).  The Bank argued that it did not accelerate the loan in 2008.[4]  But even if it did, it argued its withdrawal of the foreclosure in 2010 abandoned any prior acceleration.  Either way, it contended that the six-year limitations period had not expired by the time of the January 2015 foreclosure.

¶ 15      The district court agreed with the Bank and concluded as follows:

- The Bank "ma[de] a persuasive argument" that the documents it filed and sent to the borrower did not accelerate the loan.

- Even if the loan was accelerated prior to January 8, 2009, the acceleration was abandoned when the Bank withdrew the 2008 foreclosure.

---

[4] On appeal, the Bank now admits that it accelerated the loan in 2008.

5

¶ 16    The court concluded that the foreclosure was conducted lawfully and the Bank had the "superior right to possession of the Property." It ordered Peterson and Parker to vacate, but stayed the order conditioned on monthly payments of $1000 into the court registry. The court subsequently entered judgment for the Bank on its claim and on the defendants' counterclaims. It awarded the Bank $45,624.40 in attorney fees and costs.

¶ 17    Peterson and Parker now appeal the judgment and the attorney fee and cost award.

## II.    Standing

¶ 18    Because Peterson and Parker assert a possessory interest in the property that secured the note, we conclude they have standing in the current action.

¶ 19    Traditional standing principles do not apply to defendants who raise an affirmative defense in response to a complaint as there is little concern that defendants will advance claims in which they have no stake. *Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1182, 1182 n.7 (Colo. 2003). Indeed, "a defendant may assert an affirmative defense in response to a complaint, *which asserts that the defendant has an interest in the action*." *Id.*

6

(emphasis added); *see also Sandstrom v. Solen*, 2016 COA 29, ¶¶ 14-20 (if a party's claim to a parcel of land injures a defendant's claim to that same property, the defendant has established an injury-in-fact to a legally protected interest).

### III. Statute of Limitations and the January 2015 Foreclosure

¶ 20   Peterson and Parker argue that the 2015 foreclosure was barred by the six-year statute of limitations. They contend that the statute was triggered in 2008 when the Bank accelerated the loan.

¶ 21   The Bank now admits that it accelerated the loan in 2008,[5] but argues that it abandoned the acceleration in 2010, thereby restoring the note's original maturity date for purposes of accrual. We agree with the Bank, and therefore conclude its 2015 foreclosure was timely.

#### A. Standard of Review

¶ 22   "Whether a statute of limitations bars a particular claim is a question of fact." *Trigg v. State Farm Mut. Auto. Ins.*, 129 P.3d

---

[5] The Bank concedes it accelerated the loan in October 2008 when it initiated foreclosure proceedings by "deliver[ing] its first notice of election and demand to the public trustee." *See Hassler v. Account Brokers of Larimer Cty., Inc.*, 2012 CO 24, ¶ 22 (holding that acceleration requires a clear, unequivocal act evincing an intent to invoke the creditor's contractual option to accelerate).

1099, 1101 (Colo. App. 2005). "However, if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date, then the issue of whether the statute of limitations bars a particular claim may be decided as a matter of law." *Id.*

### B. Relevant Law

¶ 23 There is a six-year statute of limitations for the recovery of a debt under a security agreement. §§ 13-80-103.5(1)(a), -108(4), C.R.S. 2018; *Hassler v. Account Brokers of Larimer Cty., Inc.*, 2012 CO 24, ¶¶ 13-15. The statute is triggered whenever the debt "becomes due" by the terms of the agreement. *See Hassler*, ¶ 22.

¶ 24 As pertinent here, the statute is triggered on the day after the date of maturity of a promissory note. *Rossi v. Osage Highland Dev., LLC*, 219 P.3d 319, 321 (Colo. App. 2009) (citing *Nagy v. Landau*, 807 P.2d 1227, 1228-29 (Colo. App. 1990)).

¶ 25 However,

> if an obligation that is to be repaid in installments is *accelerated* either automatically by the terms of the agreement or by the election of the creditor pursuant to an optional acceleration clause — the entire remaining balance of the loan becomes due immediately and the statute of limitations is triggered *for all installments that had not previously become due.*

*Hassler*, ¶ 22 (emphasis added); *see also* § 4-3-118(a), C.R.S. 2018 (If a due date is accelerated, an action must be brought "within six years after the accelerated due date.").

¶ 26    Once the statute of limitations has expired, any lien created by the instrument is extinguished.  § 38-39-207, C.R.S. 2018; *see Rossi*, 219 P.3d at 322 ("By its plain terms, this statute does not merely affect a creditor's ability to enforce a lien.  It destroys the lien.").

## C.    Abandonment

¶ 27    Several jurisdictions recognize that a lender may abandon the acceleration of a note, which has the effect of restoring the note's original maturity date for purposes of accrual. *See, e.g., Boren v. U.S. Nat'l Bank Ass'n,* 807 F.3d 99, 1104 (5th Cir. 2015).

¶ 28    Peterson and Parker argue that Colorado law does not recognize "abandonment" of an acceleration.   They rely on language in *Hassler* that states that "the creditor's course of conduct following acceleration is irrelevant." ¶ 36.  But this language is taken out of context.

¶ 29    The issue in *Hassler* was whether a creditor bank sufficiently manifested its intent to *invoke* an acceleration of a car loan, given

9

that a "clear, unequivocal act is necessary to invoke an optional acceleration clause." *Id.* at ¶ 25.

¶ 30    There, the creditor bank repossessed a car and sent the debtor a letter demanding that he repay the entirety of his debt. *Id.* at ¶ 5. But it was still sending the debtor monthly billing statements for the loan. *Hassler* held that because there was "some *act* of the creditor [that] amounted to a clear manifestation of its intent to accelerate," this "conduct following acceleration is irrelevant," because:

> [F]ollowing repossession and receipt of the repossession letter, [the debtor] was on notice that he could only retake possession by repaying the entire amount owed on the loan. Any contradictory action that [the creditor bank] may have later taken was insufficient to un-ring this bell.

*Id.* at ¶ 36.

¶ 31    Thus, the language cited by Peterson and Parker was limited by its context; it applied only to the determination whether a creditor bank's *invocation* of an acceleration clause was unequivocal.

¶ 32    In fact, no Colorado case has directly addressed whether a creditor may subsequently abandon its acceleration of a loan.

Because Colorado has not yet had the opportunity to address the issue of abandonment, we will do so here.

¶ 33    Other jurisdictions have recognized that lenders may abandon the right to accelerate a note after it has already exercised its option to accelerate. *See Boren,* 807 F.3d at 1104; *Paggen v. Bank of Am., N.A.,* No. 17-CV-012410RBJ, 2018 WL 4075881, at *5 (D. Colo. Aug. 27, 2018) (citing cases); *Mitchell v. Fed. Land Bank,* 174 S.W.2d 671, 676 (Ark. 1943).

¶ 34    The concept of abandonment is based on the principle of waiver. *Boren,* 807 F.3d at 1105.  Waiver is the intentional relinquishment of a known right or privilege.  *Dep't of Health v. Donahue,* 690 P.2d 243, 247 (Colo. 1984).  Thus, to abandon (or waive) an acceleration, a lender must manifest its intent to abandon acceleration by a clear affirmative act.  *See, e.g., Boren,* 807 F.3d at 104-06.

¶ 35    The acceleration of a note can be abandoned "by agreement or other action of the parties."  *Id.* (holding that a lender abandoned acceleration by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default); *Bartram v. U.S. Bank Nat'l Ass'n,*

11

211 So. 3d 1009, 1021 (Fla. 2016) (stating that "the dismissal of the foreclosure action had the effect of revoking the acceleration"); *Andra R Miller Designs v. US Bank NA,* 418 P.3d 1038 (Ariz. Ct. App. 2018) (holding that a creditor's recorded cancellation of the trustee's sale was an affirmative act sufficient to revoke an acceleration); *see also Paggen,* 2018 WL 4075881, at *5 (citing cases); *Deutsche Bank Nat'l Tr. Co. Ams. v. Bernal,* 59 N.Y.S.3d 267, 273 (N.Y. Sup. Ct. 2017).

¶ 36    The great weight of authority recognizes this right of abandonment. And because our supreme court already recognizes that the doctrine of waiver applies to acceleration, *see, e.g., Goodwin v. Dist. Court,* 779 P.2d 837, 843-44 (Colo. 1989), we conclude that, in Colorado, a lender may abandon the acceleration of a note.

¶ 37    Here, the Bank abandoned its previous acceleration of a loan by not only withdrawing the foreclosure but also by communicating its abandonment to the borrower. Indeed, the borrower and the Bank negotiated a loan modification after the Bank sent the borrower a new acceleration warning letter providing him another opportunity to cure the default.

12

¶ 38    On this record, we conclude that the district court correctly determined that acceleration was abandoned.

¶ 39    As pertinent here, abandonment restores the note's original maturity date for purposes of accrual of the statute of limitations. *See Boren*, 807 F.3d at 104; *Mitchell*, 174 S.W.2d at 676-77 (holding that the bank had the right, by its unilateral act, to waive its acceleration and restore all the terms of the mortgages as originally executed).

¶ 40    Thus, when the Bank abandoned its acceleration of the loan prior to the January 2015 foreclosure, the loan was restored to its original nature as an installment loan with a maturity date of June 1, 2037.  Accordingly, we conclude the limitations period had not expired when the Bank foreclosed on the property.

¶ 41    Because of our resolution above, we need not address the Bank's alternative arguments in support of the timeliness of the January 2015 foreclosure.

IV.    Attorney Fees and Costs

¶ 42    After granting the Bank possession of the property, the district court awarded attorney fees to the Bank pursuant to section 13-40-123, C.R.S. 2018.  The statute provides for an award of attorney

13

fees and costs to the prevailing party in a forcible entry and detainer action. Because the Bank was the prevailing party, we decline to disturb the award.

## V. Conclusion

¶ 43    We affirm the judgment and the award of attorney fees.

JUDGE ROMÁN and JUDGE FURMAN concur.