2014 COA 79

Raymond L. FISCUS, a/k/a Ray Fiscus, Petitioner–Appellee,

v.

LIBERTY MORTGAGE CORPORATION, a Georgia corporation; BB & T Corporation, a North Carolina corporation; and Branch Banking and Trust Company, a North Carolina corporation, Respondents–Appellants.

Court of Appeals No. 13CA0420

Colorado Court of Appeals, Div. III.

Announced June 19, 2014

Hoskin Farina & Kampf, David M. Dodero, Nicholas H. Gower, Grand Junction, Colorado, for Petitioner–Appellee.

Dufford, Waldeck, Milburn, & Krohn, L.L.P., Christopher G. McAnany, Grand Junction, Colorado, for Respondents–Appellants.

Opinion by JUDGE MILLER

¶ 1 Appellants, Liberty Mortgage Corporation, BB & T Corporation, and Branch Banking and Trust Company (collectively, the banks), appeal the trial court's order declaring Branch Banking and Trust's deed of trust against the property owned by appellee, Raymond L. Fiscus, a/k/a Ray Fiscus (owner), invalid and ordering its release. The banks also appeal the trial court's order awarding owner attorney fees and costs. We affirm and remand with directions for further proceedings regarding owner's attorney fees on appeal.

¶ 2 Owner sued the banks under the spurious lien statute, sections 38–35–201 to –204, C.R.S.2013, seeking to have a deed of trust recorded by Branch Banking and Trust in 2009 declared spurious. The deed of trust on owner's separately owned property was recorded after his wife executed it as his attorney-in-fact, based on a forged power of attorney. The trial court declared the deed of trust spurious and ordered its release. On appeal, the banks challenge the trial court's rulings regarding (1) the statute of limitations; (2) whether counterclaims and third-party claims may be raised in spurious lien actions, which is an issue of first impression discussed in Part IV; (3) the allocation of the burden of proof; (4) whether owner ratified the deed of trust; (5) whether a holder in due course defense was available to the banks; and (6) the award of attorney fees and costs to owner. We affirm the trial court's rulings.

I. Background

¶ 3 Owner filed his petition for a show cause hearing under the spurious lien statute and C.R.C.P. 105.1, seeking to invalidate the 2009 deed of trust. The banks counterclaimed against owner, asking to judicially foreclose on the property, alleging unjust enrichment, and seeking an equitable lien against the property. The banks also filed a third-party complaint against wife alleging theft. The trial court held that counterclaims and third-party claims are not permitted in this limited statutory proceeding and dismissed them without prejudice under C.R.C.P. 12(f).

¶ 4 The court held a three-day hearing on the show cause petition, at which owner, wife, wife's daughter, a forensic document expert, and a representative of BB & T testified. The trial court found the following facts, and its findings are supported by the record.

¶ 5 Owner and Vicky Casper–Fiscus (wife) were married in 1985. In 1987, owner purchased in his own name a property that served as the couple's marital residence. During the marriage, wife handled the household bills and financial matters, including the payment of the couple's mortgage loan, and arranging for the preparation of their joint tax returns through an accounting firm. Owner did not regularly review bank statements for the couple's joint accounts.

¶ 6 In August 2008, a deed of trust on owner's property was recorded to secure a loan made by Wells Fargo Financial in the amount of approximately $220,000. Wife executed the deed of trust by signing it in her own name, as owner's attorney-in-fact. A relatively small portion of the proceeds from the loan was used to pay off the remaining balance of the original 1987 mortgage loan. In April 2009, another deed of trust on owner's property was recorded securing a loan made by Liberty Mortgage in the amount of $220,000. Wife also executed this deed of trust as owner's attorney-in-fact. Wife used the proceeds of the 2009 loan to pay off the loan secured by the 2008 deed of trust, which was then released. Owner was unaware of the 2008 and 2009 loans and deeds of trust.

¶ 7 In December 2011, a representative from Merrill Lynch called owner to request authorization for a $5000 transfer wife had attempted to initiate from his IRA account. Owner learned from the representative that wife previously had transferred $10,000 from his IRA account. Owner determined that wife had done so with the assistance of her son-in-law, who had impersonated owner on the phone. Owner obtained a credit report and discovered numerous unauthorized credit cards open in his name, as well as a $220,000 deed of trust in favor of Branch Banking and Trust of which he had been previously unaware.

¶ 8 In January 2012, owner researched property records in his name and discovered the 2008 and 2009 deeds of trust. He also discovered that powers of attorney had been recorded on the same dates the deeds of trust had been recorded. Each power of attorney purported to authorize wife to act as owner's attorney-in-fact. Wife signed owner's name on the power of attorney forms, and her daughter notarized his purported signature.

¶ 9 Owner filed a report with the sheriff regarding wife's unauthorized actions. He notified Branch Banking and Trust that he had been a victim of identity theft and requested that his loan account be closed immediately.

¶ 10 Based on these facts, the trial court concluded that the 2009 deed of trust was a spurious lien and document and ordered that it be released. It also awarded owner $82,248.98 in attorney fees and costs incurred in pursuing this action.

## II. The Spurious Lien Statute

¶ 11 A spurious lien is a purported lien or claim of lien that, as pertinent here, "[i]s not created, suffered, assumed, or agreed to by the owner of the property it purports to encumber...." § 38-35-201, C.R.S. 2013. The spurious lien statute provides for an expedited show cause proceeding to determine the validity of a lien upon the filing of a petition supported by an affidavit alleging that the petitioner's real property has been encumbered by a recorded or filed lien or document. § 38-35-204, C.R.S. 2013. The statute also requires the award of attorney fees and costs to the prevailing party. §§ 38–

35–204(1)(c), (2)–(3). C.R.C.P. 105.1 sets forth specific procedures governing show cause actions under the spurious lien statute. *See Westar Holdings P'ship v. Reece*, 991 P.2d 328, 331–32 (Colo.App.1999).

## III. Statute of Limitations

¶ 12 The banks contend the trial court erred when it held that owner's spurious lien petition was not barred by the statute of limitations. We disagree.

### A. Standard of Review

■ ¶ 13 We review de novo a trial court's application of the statute of limitations where the facts relevant to the date on which the statute of limitations accrues are undisputed. *Sterenbuch v. Goss*, 266 P.3d 428, 432 (Colo. App.2011).

### B. Law and Analysis

■ ¶ 14 Spurious lien actions must be brought within two years of accrual. § 13–80–102(1)(i), C.R.S. 2013; *Deutsche Bank Trust Co. Americas v. Samora*, 2013 COA 81, ¶ 21, 321 P.3d 590. A cause of action accrues on the date "both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13–80–108(1), C.R.S. 2013. The parties disagree about when owner's action accrued.

¶ 15 Owner first became aware of the deed of trust between December 2011 and January 2012, when he learned of the loan from his credit report and searched the real property records. The banks, however, argue that the recording of the deed of trust on April 15, 2009, constituted constructive notice of the deed to owner, and that the statute of limitations for owner's spurious lien action expired two years later on April 15, 2011. Under the banks' argument, owner's action, which was filed on March 29, 2012, was untimely.

¶ 16 The banks rely on section 38–35–106(1), C.R.S. 2013, the general recording notice statute, which provides:

Any written instrument required or permitted to be acknowledged affecting title to real property, whether acknowledged, unacknowledged, or defectively acknowledged, after being recorded in the office of

the county clerk and recorder of the county where the real property is situate, *shall be notice to all persons* or classes of persons claiming any interest in said property. (Emphasis added.) The banks argue that recording serves as notice to all persons, including the current owner of the property.

¶ 17 The supreme court has previously explained that while the purpose of the recording act is to protect "subsequent bona fide purchasers for value, it should not be at the expense of prior in time innocent parties." *Upson v. Goodland State Bank & Trust Co.*, 823 P.2d 704, 707 (Colo.1992). To apply the recording statutes as the banks propose would be at odds with *Upson* and the purpose of the recording statute. *Cf. Deutsche Bank*, ¶ 27 (in holding that property owner's action to lift a spurious lien accrued when she actively participated in pursuing a criminal action against the parties who recorded the lien, the division did not address whether the action accrued on the date the lien was recorded, five years earlier).

¶ 18 Accordingly, we decline to hold that the recording of a spurious lien automatically constitutes the accrual of the property owner's action against the holder of the lien. We are not persuaded that in order to exercise reasonable diligence, a property owner must, without any further prompting or indication of problems, regularly check the recorder's office for potential spurious filings on his or her property to avoid the expiration of the statute of limitations on claims to remove such filings. *See, e.g., Brown v. W.M. Acree Trust*, 999 P.2d 1119, 1121 (Okla. Civ.App.2000) ("[R]easonable diligence [for purposes of the statute of limitations] does not require [property owners] to check the public records each year to ascertain whether anyone has filed a forged deed.").

¶ 19 Still, we must consider whether the exercise of reasonable diligence would have led owner to discover the existence of the deed of trust before his actual discovery in December 2011 or January 2012. In determining what degree of diligence would be reasonable, we recognize that in a fiduciary relationship such as marriage, "'facts which would ordinarily require investigation may not excite suspicion, and the same degree of diligence is not required.'" *Johnston v.*

*CIGNA Corp.*, 916 P.2d 643, 646 (Colo.App. 1996) (quoting *Lucas v. Abbott*, 198 Colo. 477, 481, 601 P.2d 1376, 1379 (1979)); *see also In re Marriage of Schelp*, 228 P.3d 151, 156 (Colo.2010) (spouses are in a fiduciary relationship with each other).

¶ 20 Owner's testimony, which the trial court explicitly found credible, indicated that during the majority of his twenty-five year marriage to wife, she generally managed the couple's financial affairs. She checked the mail regularly, had the only key to the couple's mailbox, stored financial documents in boxes underneath the house in a crawlspace accessible via a trapdoor in the closet of her home office, filed the couple's tax returns, and managed bank accounts and bill payments online. The banks argue that owner had a duty to review his family finances and could have discovered the deed of trust simply by looking at the financial documents kept within the house, account statements, or other "readily available" information. We are not persuaded.

¶ 21 The trial court concluded that, had owner exercised reasonable diligence, April 2010 was the earliest date he could or should have discovered the existence of the deed of trust. The record supports the trial court's finding.

¶ 22 There is evidence that wife concealed the 2009 deed of trust from owner by not providing him with documents relating to it and storing relevant documents in the crawl space of the house. Owner testified that he generally gave his tax documents to wife, who then transmitted them to their tax accountant, and that he did not review their joint tax returns. He also stated that he did not understand all of the tax return forms, which was why he hired a tax preparation company. In February 2009, at wife's request, owner signed an e-file authorization for the electronic filing of his 2008 tax return. Owner testified that he did not review this tax return before signing the authorization.

¶ 23 Assuming without deciding that the exercise of reasonable diligence would have prompted owner to obtain copies of the couple's tax returns and review them yearly, the 2008 tax return reflected a mortgage interest deduction of only $1722. Owner testified

that an interest deduction of this amount would not have seemed unusual to him, based on the amount of his original note and mortgage on the property.

¶ 24 Owner asked wife in April 2010 if he needed to sign the 2009 tax return. She told him that he did not need to sign the 2009 return because he had electronically signed the prior year's return. At this point, owner could have taken further steps, such as confirming that no signature at all was required, asking wife if he could inspect the tax return, or calling the tax preparation company, which might have led him to discover a more than seven-fold increase in the interest deduction over the prior year's amount. But even assuming his cause of action accrued in April 2010 when he had the conversation with his wife about the 2009 return, owner nonetheless timely filed the spurious lien petition on March 29, 2012.

¶ 25 Accordingly, the trial court did not err by determining that owner's petition is not barred by the two-year statute of limitations.

## IV. Dismissal of Counterclaims and Third–Party Claims

¶ 26 The banks contend the trial court when it granted owner's motion to strike their counterclaims for judicial foreclosure, unjust enrichment, and an equitable lien, as well as their third–party claim against wife alleging theft. We disagree.

### A. Standard of Review and Law

¶ 27 We review the trial court's interpretation of the rules of civil procedure de novo. *City & Cnty. of Broomfield v. Farmers Reservoir & Irrigation Co.,* 239 P.3d 1270, 1275 (Colo.2010).

¶ 28 The Colorado Rules of Civil Procedure apply to all civil proceedings, including all special statutory proceedings, with the exceptions stated in Rule 81. C.R.C.P. 1(a). That rule excepts "procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute." C.R.C.P. 81. The exception is "triggered by the express provision of an adequate, exclusive, full, and complete procedure and practice as to the special statutory proceeding which plainly obviates the need

for application of the rules of civil procedure." *Spencer v. Bd. of Cnty. Comm'rs,* 39 P.3d 1272, 1277 (Colo.App.2001) (internal quotation marks omitted). This principle is in harmony with the general principles of statutory construction that specific terms prevail over general terms and that interpretations creating conflicts between two statutes should be avoided. *See* § 2–4–205, C.R.S.2013; *Tuscany, LLC v. W. States Excavating Pipe & Boring, LLC,* 128 P.3d 274, 278 (Colo.App.2005).

¶ 29 Any person whose real or personal property is affected by a spurious lien or spurious document may petition the district court for an order directing the party who recorded the lien or document to appear and show cause why the lien or document should not be declared invalid. § 38–35–204(1); C.R.C.P. 105.1(a). A party seeking to invalidate a spurious lien or document may initiate a separate action or assert such a claim as a counterclaim or cross-claim in a pending action. C.R.C.P. 105.1(a). The rule and section 38–35–204 provide "a very expedited procedure for removing invalid liens." *Sifton v. Stewart Title Guar. Co.,* 259 P.3d 542, 545 (Colo.App.2011). The rule requires that the hearing on the order to show cause be held between fourteen and twenty-one days after the order is served, at which time the lien claimant must show cause why the lien or document is not invalid. § 38–35–204(1)(a); C.R.C.P. 105.1(a)(1), (b). The lien claimant must file a verified response not less than seven days before the hearing date. C.R.C.P. 105.1(c).

¶ 30 Under C.R.C.P. 105.1, the entire proceeding is intended to be completed within fourteen to twenty-one days of the issuance of an order to show cause. However, "[i]f necessary, the court may in its discretion continue the hearing on the show cause order for further proceedings and trial." C.R.C.P. 105.1(d). During the show cause hearing, the parties are not limited solely to their pleadings, and have the right to present evidence for the court's consideration. *Westar Holdings,* 991 P.2d at 332.

¶ 31 The simplicity and expedited time frame of Rule 105.1 proceedings contrasts with the more complex and protracted proceedings under the general civil rules. As relevant here, C.R.C.P. 13 and 14 provide for

the pleading of counterclaims and third-party claims. *Allen v. Martin,* 203 P.3d 546, 555 (Colo.App.2008) (counterclaims); *Pub. Serv. Co. of Colo. v. Dist. Court,* 638 P.2d 772, 775 (Colo.1981) (third-party claims). Replies to counterclaims and responses to third-party claims may be filed within twenty-one days of service of the answer. C.R.C.P. 12(a). If the third-party defendant files and serves counterclaims or cross-claims, or if the plaintiff files and serves a claim against the third-party defendant during those twenty-one days, the parties served shall have an additional twenty-one days to file and serve replies and responses. C.R.C.P. 14(a). And, these deadlines are suspended pending the resolution of any motions to dismiss filed under C.R.C.P. 12(b).

## B. Analysis

¶ 32 Thus, allowing the filing of counterclaims and third-party claims would render the twenty-one-day requirement in C.R.C.P. 105.1 meaningless. The result is an unavoidable conflict between the time frame set forth in the specific provisions governing spurious lien proceedings and the pleading procedures providing for counterclaims and third-party claims in general civil actions. Accordingly, under C.R.C.P. 81, the timing and procedure set forth in section 38–35–204(1)(a) and C.R.C.P. 105.1 control. *Cf. People in Interest of A.C., III,* 170 P.3d 844, 845 (Colo.App.2007) (dependency and neglect adjudicatory statute requiring hearings be held no later than sixty days after service of the petition conflicted with general rule providing that motions for summary judgment shall be filed no later than eighty-five days prior to trial, and thus adjudicatory statute governing special proceedings controlled).

¶ 33 The language of C.R.C.P. 105.1 further supports this interpretation. While the rule specifically provides that a party may bring a spurious lien or document petition as a counterclaim or a cross-claim in a pending action, it does not articulate the reverse: namely, that counterclaims or other claims may be brought in a spurious lien proceeding. C.R.C.P. 105.1(a). When interpreting a rule of procedure, "[w]ords and provisions should not be added to a rule, and the inclusion of certain terms in a rule implies the exclusion of others." *Farmers Reservoir & Irrigation Co.,* 239 P.3d at 1275. Thus, the specific inclusion of language permitting spurious lien or document claims to be brought in pending actions as counterclaims or cross-claims implies the exclusion of a provision permitting counterclaims or cross-claims to be brought in a spurious lien action.

¶ 34 Because the specific rules governing a spurious lien proceeding conflict with, and thus control over, the more general rules of pleading, we conclude that the trial court did not err when it concluded the banks could not raise their counterclaims and third-party claim in the spurious lien action and dismissed them without prejudice.

¶ 35 Finally, the banks assert that the striking of their counterclaims and third-party claim, including the claim for an equitable lien, deprived them of due process. At oral argument in this court, counsel for both the banks and for owner agreed that the banks could file those claims in another proceeding. This is correct since claim preclusion applies only with respect to matters that have already been decided or that could have been raised in a prior proceeding. *See, e.g., Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo.2005). Because the court struck the banks' counterclaims and third-party claim in this case under C.R.C.P. 12(f), the banks were left free to bring them in a separate case. Accordingly, the trial court's striking of those claims did not deprive the banks of any due process right to pursue them.[1]

---

1. The banks' opening brief also makes passing references to due process concerns regarding a lack of full discovery and not receiving an expert's report in advance. These references are unaccompanied by citation to any authority, discussion of the underlying facts, or articulation of any specific resultant prejudice. We decline to review such conclusory assertions. *See* C.A.R. 28(a)(4) (an opening brief shall contain appellant's argument, which "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on"); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."); *see also Barnett v. Elite Props. of Am., Inc.,* 252 P.3d 14, 19 (Colo.App.2010) (we will not consider a proposi-

### V. Burden of Proof

¶ 36 The banks argue that the trial court erred by concluding that Branch Banking and Trust had the burden of proving why the deed of trust should not be declared spurious and invalid. We perceive no error.

¶ 37 Assuming without deciding that the trial court erred in placing the burden of proof on the banks, any such error was harmless. The shifting of the burden of proof is "of practical consequence only in the rare event of an evidentiary tie." *Blodgett v. Comm'r of Internal Revenue*, 394 F.3d 1030, 1039 (8th Cir.2005) (internal quotation marks omitted). Here, the banks do not dispute the relevant facts on appeal; rather, they dispute only their legal effect. The sole prejudice alleged by the banks is that having had to put on their case first forced them to anticipate owner's testimony in shaping a defense. But, the banks sought, and obtained, a continuance in order to depose owner, wife, and wife's daughter. Then, armed with owner's deposition, the banks called him as their first witness at the hearing and used the deposition to impeach him. On the third day of the hearing, after owner had presented his case and testified a second time, the banks advised the court that they had no rebuttal.

¶ 38 The banks do not identify any testimony of owner that came as a surprise, nor do they identify any specific factual findings that would have come out differently if the trial court had reversed the burden or order of proof. Accordingly, the banks were not unfairly prejudiced by the trial court's burden of proof ruling or by having to anticipate owner's testimony.

### VI. Ratification of the Deed of Trust

¶ 39 The banks argue the trial court erred when it invalidated the deed of trust. They contend that owner ratified it by filing the 2009 and 2010 income tax returns in which he claimed interest deductions on the loans secured by the 2008 and 2009 deeds of trust and by never renouncing those deductions. We are not persuaded.

¶ 40 Ratification occurs when a party "with knowledge of all material facts"

---

adopts and confirms an act performed or entered into on his behalf by another, without authorization. *Siener v. Zeff*, 194 P.3d 467, 471 (Colo.App.2008). The burden of proving ratification with full knowledge of all material facts is on the party alleging it— here, the banks. *Id.* at 473. The requirement of knowledge is a question of fact. *Id.* We review the trial court's factual findings for clear error and decide whether any evidence in the record supports the trial court's findings. *See Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶ 13, 350 P.3d 863 (*cert. granted*, Feb. 24, 2014).

¶ 41 The banks failed to prove that owner had knowledge of all the material facts regarding the deed of trust. Indeed, the trial court found that owner did not have knowledge of all of the material facts relating to the deed of trust until December 2011. Shortly after learning of the circumstances of its creation, he took action to have the deed declared invalid. Owner presented copious evidence that he was unaware of the material facts giving rise to the creation of the deed of trust. Even though wife testified that she believed she informed owner of the refinance, her admission that she signed owner's name on the multiple powers of attorney without his knowledge, and the trial court's determination that she was not credible, to which we defer, belie that testimony. *See People v. Pitts*, 13 P.3d 1218, 1223 (Colo.2000) (when trial courts include determinations in their findings that testimony is not credible, appellate courts will uphold such findings on appeal). Thus, because owner lacked full knowledge of all material facts giving rise to the deed of trust, we need not consider the effect of his tax returns, which claimed a mortgage interest deduction for the loan.

¶ 42 Respondents also contend that owner ratified the 2009 deed of trust by failing to renounce his claim for interest deductions after he learned the true facts. The apparent premise for that argument is that the Internal Revenue Service would disallow the deductions under the circumstances of this case, where Branch Banking and Trust has

---

tion presented without argument or development; an appellant must make specific asser-

tions of error, supported by facts and authority).

not asserted that it refunded the payments made on the 2009 loan. Respondents have not provided any authority under the Internal Revenue Code or related regulations and case law to support this proposition. We therefore decline to review the contention. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo.App.2010).

¶ 43 We therefore conclude that owner did not ratify the deed of trust.

### VII. Holder in Due Course

¶ 44 The banks contend the trial court erred when it concluded that Branch Banking and Trust was not a holder in due course pursuant to section 4–3–302, C.R.S.2013, who took the deed of trust free from any defense of forgery under section 4–3–305, C.R.S.2013. Once again, we perceive no error.

■■■ ¶ 45 The question whether a party is a holder in due course under undisputed facts is a question of law that we review de novo. *Georg v. Metro Fixtures Contractors, Inc.*, 178 P.3d 1209, 1212 (Colo.2008).

■■■ ¶ 46 "A holder in due course must meet five conditions: (1) be a holder; (2) of a negotiable instrument who took it; (3) for value; (4) in good faith; (5) without notice of certain problems with the instrument." *Id.* at 1212–13 (footnotes omitted). A negotiable instrument is

an *unconditional* promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise of the order, if it

(1) Is payable to bearer or to order *at the time it is issued* or first comes into possession of a holder;

(2) Is payable on demand or at a definite time; and

(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an

authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

§ 4–3–104(a), C.R.S. 2013 (emphasis added).

■■■ ¶ 47 A deed of trust is a "security instrument containing a grant to a public trustee together with a power of sale." § 38–38–100.3(7), C.R.S. 2013. When a written agreement makes an obligation to pay subject to express conditions, rather than payable on demand, an agreement is not a negotiable instrument. *Reid v. Pyle*, 51 P.3d 1064, 1067 (Colo.App.2002). Because a deed of trust is, by definition, a security instrument and not a negotiable instrument, Branch Banking and Trust cannot be a holder in due course. *See Georg*, 178 P.3d at 1212–13.

¶ 48 The banks contend that because a promissory note secured by a deed of trust is a negotiable instrument under the Uniform Commercial Code, the note and the deed of trust together constitute a negotiable instrument, citing *Haberl v. Bigelow*, 855 P.2d 1368, 1372 (Colo.1993). *Haberl* supports the first half of that proposition, but not the second. The supreme court in that case pointed out that a note does not lose its character as a negotiable instrument because it is collateralized by a mortgage, but did not hold that a deed of trust securing a note is itself a negotiable instrument. *Id.* To the contrary, the court quoted with approval one decision holding that "the U.C.C. does not apply to [a] security interest in realty." *Hughes v. Tyler*, 485 So.2d 1026, 1029 (Miss. 1986). Thus, *Haberl* provides no support for the banks' argument that the deed of trust is a negotiable instrument.[2]

¶ 49 Because Branch Banking and Trust is not a holder in due course, the trial court correctly held that the defense set forth in section 4–3–305 was not available to it.

---

2. Owner asserted during oral argument a complex contention based on numerous sections of the Uniform Commercial Code on the question whether the 2009 deed of trust is a negotiable instrument. Counsel conceded that this argument was not raised before the trial court or in his briefs. We do not consider arguments raised for the first time at oral argument. *See Bd. of Cnty. Comm'rs v. City of Greenwood Village*, 30 P.3d 846, 849 (Colo.App.2001).

## VIII. Wife's Alleged Interest in the Property

¶ 50 We reject the banks' contention that the trial court erred when it concluded wife did not have an ownership interest in the property sufficient to allow her to encumber the property.

¶ 51 The banks maintain that because owner's separately titled property was the couple's marital home, wife had an interest in the property as marital property and thus had sufficient equitable interest to encumber the property with the deed of trust. The banks cite no authority, and we have found none, that supports their contention.

¶ 52 Generally, a property may only be encumbered or conveyed by its owner. *In re Estate of Reed*, 201 P.3d 1264, 1267 (Colo.App.2008). "Prior to the filing of a dissolution of marriage action, a spouse's rights in property held in the name of the other spouse are inchoate." *Shearton Serv. Corp. v. Johnson*, 5 P.3d 395, 397 (Colo.App. 2000). An inchoate interest is an interest in real estate which is not a present interest, but which may ripen into a vested estate. *Bayou Land Co. v. Talley*, 924 P.2d 136, 149 (Colo.1996). A person with no record interest in the property he or she attempts to convey to the public trustee via a deed of trust creates only a "wild deed," which is considered a spurious document. *See GMAC Mortg. Corp. v. PWI Grp.*, 155 P.3d 556, 557–58 (Colo.App.2006).

¶ 53 Thus, the trial court did not err when it rejected the banks' argument that wife, as owner's spouse, had a sufficient equitable interest in his separate property to encumber it.

## IX. Attorney Fees

¶ 54 The trial court awarded attorney fees against the banks, concluding that an award of fees was required under section 38–35–204(2). The banks contend the trial court erred because the banks were free of misconduct and made rational arguments for the validity of the deed of trust. We are not persuaded.

¶ 55 We review de novo a statutory interpretation that provides a basis for a fee award. *First Citizens Bank & Trust Co. v.* *Stewart Title Guar. Co.*, 2014 COA 1, ¶ 32, 320 P.3d 406.

¶ 56 The spurious lien statute provides that, upon declaring a spurious lien invalid, the "court *shall* make findings of fact and enter ... a monetary judgment in the amount of the petitioner's costs, including reasonable attorney fees, against any respondent and in favor of the petitioner." § 38–35–204(2) (emphasis added); *see also* C.R.C.P. 105.1(d). Both the statute and the procedural rule governing spurious lien proceedings contain the mandatory language "shall." *See Giguere v. SJS Family Enters., Ltd.*, 155 P.3d 462, 471 (Colo.App.2006) ("shall award" language mandates an award of attorney fees and costs). Thus, the trial court did not have any discretion whether to attorney fees and costs to owner upon entry of its order declaring the deed invalid, and the banks do not otherwise challenge the amount of the fees awarded.

¶ 57 The banks cite to *Rossi v. Osage Highland Dev., LLC*, 219 P.3d 319 (Colo.App. 2009), where a division of this court declined to award fees against a person who had filed a spurious document. The division held that a document is spurious only if the person filing it "can offer no rational legal or factual support for its validity." *Id.* at 323 (citing *Pierce v. Francis*, 194 P.3d 505, 509 (Colo. App.2008)).

¶ 58 The division's conclusion flowed from the statutory definition of "spurious document," which includes one that is "groundless." § 38–35–201(3). Divisions of this court have defined a groundless document as "one for which a proponent can advance no rational argument based on evidence or the law to support the claim of a lien." *Westar Holdings*, 991 P.2d at 330 (citing *Harris v. Hanson*, 821 P.2d 821, 824 (Colo.App.1991)).

¶ 59 However, the definition of "spurious lien" does not include "groundless" as an element or component. Accordingly, *Rossi* is inapposite to this spurious lien case, and owner is therefore entitled to recover his attorney fees.

¶ 60 Owner also requests an award of his attorney fees incurred in defending this appeal. Because we affirm the trial

court's judgment determining that the 2009 deed of trust was a spurious lien, we grant owner's request. *See* § 38–35–204(2); *Melssen v. Auto-Owners Ins. Co.*, 2012 COA 102, ¶ 75, 285 P.3d 328 ("When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal." (quoting *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo.App.2006))). Under C.A.R. 39.5, we remand the matter to the trial court to determine and award to owner the amount of fees he incurred in responding to this appeal.

### X. Conclusion

¶ 61 The judgment is affirmed and the case is remanded to the trial court to determine and award owner his appellate attorney fees.

JUDGE WEBB and JUDGE GABRIEL concur.